GOFF v BIL-MAR FOODS, INC (AFTER REMAND)

DUDLEY v MORRISON INDUSTRIAL EQUIPMENT COMPANY

Docket Nos. 102865, 103634. Argued November 12, 1996 (Calendar Nos. 6-7). Decided June 3, 1997.

Grant S. Goff was awarded worker's compensation for a back injury suffered in the course of his employment with Bil-Mar Foods, Inc. After seventeen weeks, he was pronounced fit for work, and compensation was stopped. He then petitioned for reinstatement of benefits, and a magistrate granted continuing benefits after finding a work-related continuing partial disability. The Worker's Compensation Appellate Commission reversed, finding no competent, material, and substantial evidence in the record to support the award. The Court of Appeals, DOCTOROFF, P.J., and MICHAEL J. KELLY and MARILYN KELLY, JJ., denied leave to appeal (Docket No. 162351). The Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted. 445 Mich 905 (1994). After remand, the Court, MURPHY, P.J., and MACKENZIE and HOEKSTRA, JJ., affirmed in an unpublished opinion per curiam (Docket No. 175556). The plaintiff appeals.

George Dudley was granted an open award of worker's compensation after he suffered a back injury in the course of his employment with Morrison Industrial Equipment Company. The Worker's Compensation Appellate Commission reversed for lack of competent, material, and substantial evidence on the record. The Court of Appeals, MACKENZIE, P.J., and GRIFFIN, J. (NEFF, J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 168027). The plaintiff appeals.

In an opinion by Chief Justice MALLETT, joined by Justices BRICKLEY, CAVANAGH, and BOYLE, the Supreme Court *held*:

In *Goff*, the WCAC correctly applied the standard of review in its decision to reverse the award of the magistrate; in *Dudley*, it exceeded its authority in doing so.

1. Findings of fact made by a worker's compensation magistrate are to be considered conclusive by the Worker's Compensation Appellate Commission if supported by competent, material, and substantial evidence on the whole record. "Substantial evidence" means such evidence, considering the whole record, as a reason-

able mind will accept as adequate to justify the conclusion. "Whole record" means all evidence for and against a certain determination. Factual determinations of the commission, if acting within the scope of its powers, are conclusive, absent any fraud. This less than de novo review by the WCAC includes both a qualitative and quantitative analysis of the evidence in order to ensure a full, thorough, and fair review. The Court of Appeals and the Supreme Court may only review questions of law pertaining to the WCAC's final orders on application.

2. Meaningful review must begin with the magistrate's decision. If competent, material, and substantial evidence based on the whole record supports the magistrate's decision, the WCAC need go no further; if it does, it is exceeding its authority. If the WCAC finds that the magistrate did not rely on competent evidence, it must carefully detail its findings of fact and the reasons for its findings grounded in the record. It is then free to make its own findings, which are conclusive if the commission was acting within its powers. Ultimately, the role of the Court of Appeals and the Supreme Court is only to evaluate whether the WCAC exceeded its authority.

3. In *Goff*, the WCAC properly applied the substantial evidence on the record standard and was justified in finding that the magistrate's decision was not founded on competent, material, and substantial evidence and therefore could not be considered conclusive. In *Dudley*, the WCAC exceeded its authority and erred in reversing the decision of the magistrate.

*Goff* affirmed.

*Dudley* reversed.

Justice WEAVER, joined by Justice RILEY, concurring in part and dissenting in part, stated that, when applied in *Dudley*, the analysis of *Holden v Ford Motor Co*, 439 Mich 257 (1992), requires a finding that the commission did not exceed its authority by rejecting the magistrate's finding regarding credibility because the magistrate's credibility assessment was not, in fact, supported by the requisite substantial evidence standard. As a result of the majority's position, *Holden* will be undermined, rendering it virtually useless, increasing the backlog of reviewing courts, and depriving the Worker's Compensation Appellate Commission of its authority to conduct qualitative, as well as a quantitative, review of the whole record pursuant to MCL 418.861a(13); MSA 17.237(861a)(13).

*Holden* sufficiently describes the standard of review of the magistrate by the commission, and of the commission by a reviewing court. Reviewing courts should affirm the commission's decision when the commission clearly indicates that it was cognizant of the due deference it must accord the magistrate and should be

reversed only if the appellate court can show that the commission grossly misapplied the substantial evidence standard in its review of the magistrate and, in so doing, exceeded its statutory authority. Justice KELLY took no part in the decision of these cases.

*Williams, Klukowski, Fotieo & Szczytko, P.C.* (by *Michael P. Szczytko*), for the plaintiff-appellant in *Goff.*

*Waters, Cook, Oslund & Waugh, P.C.* (by *James K. Oslund*), for the plaintiff-appellant in *Dudley.*

*Grzanka, Grit* (by *Garrett TenHave-Chapman* and *Constance J. Grzanka*) for the defendant-appellee in *Goff.*

*Foster, Swift, Collins & Smith, P.C.* (by *Michael D. Sanders*), for the defendants-appellees in *Dudley.*

MALLETT, C.J. In these combined cases, we must decide whether the Worker's Compensation Appellate Commission acted within the proper scope of its reviewing power in concluding that the magistrates' findings supporting the grant of benefits were not supported by competent, material, and substantial evidence on the whole record. In both cases, the WCAC reversed the magistrates' awards and the Court of Appeals affirmed. We affirm in *Goff* and reverse in *Dudley.*

I

The questions presented concern the proper interpretation and scope of the "competent, material, and substantial evidence on the whole record" standard that the administrative tribunals are required by statute to apply in evaluating these cases. Because these determinations are often difficult and will have serious implications for future appeals, it is worthwhile

to restate the concepts that form the basis of the Worker's Disability Compensation Act and provide the background for our discussion today.

The WDCA was enacted to be workers' exclusive remedy for work-related injuries.[1] MCL 418.131(1); MSA 17.237(131)(1). The act defines a work-related injury as

> a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. An ordinary disease of life to which the public is generally exposed outside of the employment is not compensable. Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. [MCL 418.401(2)(b); MSA 17.237(401)(2)(b).]

A finding that an injury has been significantly caused or aggravated by employment will depend on the "totality of all the occupational factors . . . ." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 217; 501 NW2d 76 (1993). These factors include the claimant's health circumstances and various nonoccupational factors.[2]

When a work-related injury is established, the employer may automatically pay an award of benefits. In exchange, the worker refrains from pursuing tradi-

---

[1] The only exception to this exclusive remedy is an action for intentional tort. MCL 418.131(1); MSA 17.237(131)(1).

[2] For example, with reference to heart injuries some of the nonoccupational factors evaluated might include age, weight, diet, previous cardiac ailments or injuries, genetic predispositions, and the claimant's consumption of alcohol and use of tobacco or other drugs. *Farrington* at 217, n 17.

tional tort or negligence remedies. *Weems v Chrysler Corp*, 448 Mich 679, 707-708; 533 NW2d 287 (1995) (CAVANAGH, J., concurring in part and dissenting in part). Finally, the WDCA, intended as a remedial measure, must be "liberally construed to grant rather than deny benefits." *Sobotka v Chrysler Corp*, 447 Mich 1, 20, n 18; 523 NW2d 454 (1994) (BOYLE, J., lead opinion).

As the cases reveal, establishing a work-related injury is not always an easy task. A finding that an injury is work related only begins the inquiry. Each case turns on its own facts and involves credibility determinations made in the first instance by the presiding magistrate that turn on both lay and expert testimony. Because the findings of the magistrate are conclusive when supported by substantial, competent, and material evidence, it is critical that each reviewing tribunal, whether administrative or judicial, knows both how to apply the standard and its proper role in the process. The question we are faced with on judicial appellate review in each case is "whether the WCAC acted in a manner consistent with the concept of administrative appellate review that is less than de novo review in finding that the magistrate's decision was or was not supported by competent, material, and substantial evidence on the whole record." *Holden v Ford Motor Co*, 439 Mich 257, 267-268; 484 NW2d 227 (1992).

A

Our analysis necessarily begins with art 6, § 28 of the Michigan Constitution, which provides in part, "[f]indings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud

unless otherwise provided by law." Accordingly, in 1985, the Legislature enacted the latest amendments of the WDCA to provide that

> findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record. As used in this subsection, "substantial evidence" means such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion. [MCL 418.861a(3); MSA 17.237(861a)(3).][3]

The 1985 amendments eliminated de novo review by the commission. However, this less than de novo review by the WCAC still includes "both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review." MCL 418.861a(13); MSA 17.237(861a)(13). The whole record means everything: all the evidence both for and against a certain determination. MCL 418.861a(4); MSA 17.237(861a)(4). Finally, factual determinations of the commission, if acting within the scope of its powers, shall be conclusive, absent any fraud. The Court of Appeals and this Court may only review questions of law involved with the WCAC's final orders on application. MCL 418.861a(14); MSA 17.237(861a)(14).[4]

In *Holden*, we stated that "[d]ue deference should be given to the administrative expertise of the WCAC,

---

[3] This language became effective on October 1, 1986. Before that date, the act provided that "findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and a preponderance of the evidence on the whole record." MCL 418.861a(2); MSA 17.237(861a)(2).

[4] MCL 418.861a; MSA 17.237(861a) provides in pertinent part:

as well as to the administrative expertise of the magistrate. . . . If the opinion is carefully constructed, a reviewing court should ordinarily defer to the collective judgment of the WCAC unless it is manifest that it exceeded its reviewing power." *Id.* at 268-269. However, where a party claims that the WCAC has exceeded its power by reversing the magistrate, meaningful review must begin with the magistrate's decision, because if competent, material, and substantial evidence based on the whole record supports the magistrate's decision, the WCAC need go no further. If it does, the WCAC is exceeding its authority.

Application of this standard often results in confusion because it is difficult to define. In the statute, "substantial evidence" is defined as "evidence, considering the whole record, as a reasonable mind will

---

(4) As used in subsections (2) and (3), "whole record" means the entire record of the hearing including all of the evidence in favor and all the evidence against a certain determination.

\*   \*   \*

(10) The commission or a panel of the commission, may adopt, in whole or in part, the order and opinion of the worker's compensation magistrate as the order and opinion of the commission.

(11) The commission or a panel of the commission shall review only those specific findings of fact or conclusions of law that the parties have requested be reviewed.

(12) The commission or a panel of the commission may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined that the record is insufficient for purposes of review.

(13) A review of the evidence pursuant to this section shall include both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review.

(14) The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission . . . .

accept as adequate to justify the conclusion." MCL
418.861a(3); MSA 17.237(861a)(3). But it is quite pos-
sible that a reasonably minded magistrate could inter-
pret a record differently than a reasonably minded
WCAC. However, if the magistrate's conclusion is
derived from competent, material, and substantial evi-
dence, then the WCAC may not substitute its judgment
for that of the magistrate notwithstanding either the
reasonableness or the adequacy of the commission's
conclusion.[5]

B

In sharpening our understanding of the competent,
material, and substantial evidence standard, we are
guided by the principles that govern the Michigan
Employment Relations Commission that were articu-
lated in *MERC v Detroit Symphony Orchestra, Inc*,
393 Mich 116, 124; 223 NW2d 283 (1974), and high-
lighted in *Holden*. The statutory standards of adminis-

---

[5] A look at the common definitions of the terms "competent,"
"material," and "substantial," is instructive. Black's Law Dictionary (6th
ed), p 284, defines the term competent as "[d]uly qualified; . . . having
sufficient capacity, ability or authority . . . ." "Competent evidence" is
defined as "[t]hat which the very nature of the thing to be proven
requires . . . ." *Id.* The term "material" is defined as "[i]mportant; more
or less necessary; having influence or effect . . . ." *Id.* at 976. "Substan-
tial" is defined as "[o]f real worth and importance; of considerable
value; . . . actually existing; real; . . . not illusive; solid; true; veritable."
*Id.* at 1428. *The New World Dictionary, Second College Edition* (1974),
similarly defines "competent" as "well qualified; capable; fit . . . suffi-
cient; adequate." *Id.* at 289. "Material" is defined, among other things, as
"important, essential, or pertinent . . . important enough to affect the
outcome of a case . . . ." *Id.* at 874. "Substantial" is defined as "true; not
imaginary . . . strong; solid; firm." *Id.* at 1420. What can be gleaned from
these definitions is that if the magistrate makes a finding or draws a con-
clusion on the basis of competent, material, and substantial evidence,
which is solid, true, reliable, authoritative, capable, and can articulate this
evidence from the record, then the decision of the magistrate may not be
reversed.

trative and judicial appellate review applicable to the
MERC are codified in the labor mediation act and par-
allel those prescribed for the WCAC. MCL 423.23(e);
MSA 17.454(25)(e).[6] *Detroit Symphony, supra* at 121.
In that case we also evaluated the scope of review
and the differences between administrative and judi-
cial review. We noted:

> The cross-fire of debate at the Constitutional Convention
> imports meaning to the "substantial evidence" standard in
> Michigan jurisprudence. What the drafters of the Constitu-
> tion intended was a thorough judicial review of administra-
> tive decision, a review which considers the whole record—
> that is, both sides of the record—not just those portions of
> the record supporting the findings of the administrative
> agency. Although such a review does not attain the status of
> de novo review, it necessarily entails a degree of qualitative
> and quantitative evaluation of evidence considered by an
> agency. Such review must be undertaken with considerable
> sensitivity in order that the courts accord due deference to
> administrative expertise and not invade the province of
> exclusive administrative fact-finding by displacing an
> agency's choice between two reasonably differing views.
> Cognizant of these concerns, the courts must walk the
> tightrope of duty which requires judges to provide the pre-
> scribed meaningful review. [*Id.* at 124.]

In *Holden,* we recognized that when the Legislature
amended the WDCA, it did not incorporate this lan-
guage into the substantial evidence standard: that
"review by the WCAC is to be 'undertaken with consid-
erable sensitivity[,]' . . . [accord] 'due deference to
administrative expertise[,]' and to avoid displacing a
'choice between two reasonably differing views.'"

---

[6] "The findings of the commission with respect to questions of fact if
supported by competent, material, and substantial evidence on the record
considered as a whole shall be conclusive."

*Holden* at 267, quoting *Detroit Symphony, supra* at
124. Nevertheless, still persuaded by the wisdom and
reasoning in *Detroit Symphony*, we held in *Holden*
that "[d]ue deference should be given to the adminis-
trative expertise of the WCAC, as well as to the admin-
istrative expertise of the magistrate." *Id.* at 268. We
also noted that the WCAC must have some latitude if it
finds that the magistrate's decision was not supported
in the record if there is to be any meaningful and
effective review at all. *Id.*

Our role and the role of the Court of Appeals is to
determine "whether the WCAC acted in a manner con-
sistent with the concept of administrative appellate
review that is less than de novo review in finding that
the magistrate's decision was or was not supported
by competent, material, and substantial evidence on
the whole record." *Id.* at 267-268. In performing that
task, we noted in *Holden* and reiterate here that in
assessing whether the WCAC properly exercised its
reviewing power, the Court of Appeals and this Court
must consider the following: issues of credibility
determined by the magistrate; evidence accepted and
rejected by both the magistrate and the WCAC; and the
care, reasoning, and analysis employed by the magis-
trate and the WCAC in reaching their conclusions. *Id.*
at 268. We note that in conducting our review, this
Court should "ordinarily defer to the collective judg-
ment of the WCAC unless it is manifest that it exceeded
its reviewing power." *Id.* at 269. Accordingly, we
developed a four-part guide to facilitate the review
process in WDCA proceedings.

> We do not now offer a judicial standard in exegesis of the
> legislatively stated standard. If it appears on judicial appel-
> late review that the WCAC carefully examined the record,

was duly cognizant of the deference to be given to the decision of the magistrate, did not "misapprehend or grossly misapply" the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member WCAC of decisions of thirty magistrates, and bestowed on the WCAC final fact-finding responsibility subject to constitutionally limited judicial review. [*Holden* at 269.][7]

We believe that this test comports with the Michigan Constitution and the intent of the Legislature when it enacted its reform of the WDCA in 1985 that eliminated de novo review by the WCAC. We also believe that this test comports with the notions of how meaningful review of administrative proceedings should proceed. We must be respectful of administrative expertise and conduct our judicial reviews so as not to undermine the authority of administrative proceedings. We further believe that this test will insure that substantial evidence review by the WCAC does not become de novo review by some other name in WDCA proceedings. With these principles in mind, we now turn to the cases at hand.

---

[7] Although we refused to adopt this analysis as a standard expounding on the legislative one in *Holden,* as we indicated in the first sentence, we do so now.

II

A

*GOFF v BIL-MAR FOODS, INC*

In *Goff,* the magistrate awarded benefits to the complainant who suffered a back injury at work. The WCAC reversed the magistrate's award for lack of competent, material, and substantial evidence on the record. The Court of Appeals affirmed the decision of the WCAC. We affirm also.

Grant S. Goff was hired by Bil-Mar Foods, Inc. in 1988, and was assigned to operate the "hapman." This job required the continuous shoveling of twenty-five to thirty pounds of ground turkey from one large tank into smaller pots on wheels. The large tank held approximately 2,000 pounds, and each pot weighed 360 pounds when filled with meat.[8] Upon filling the smaller pot with meat, the plaintiff would roll it approximately four feet to a mechanical lift, where, at the push of a button, it would be lifted, emptied, and lowered. The plaintiff would then push the pot back to the tank and begin the process again.

On the evening of October 25, 1989, after having worked at Bil-Mar for over one year, and while shoveling meat from the tank, the plaintiff said he suddenly blacked out and experienced intense pain in his back and legs. On this particular evening, the lift on the hapman was not functioning properly and had to be watched closely to prevent the pots from hitting the floor. This required the plaintiff to lift the pots up

---

[8] The large tank was approximately 4½ feet deep and four feet square. The top of the tank came up to the bottom of his rib cage. The stainless steel shovel used by the plaintiff had a handle about 3½ feet long. The small pots were about 2½ feet high and twenty inches square.

and down by hand to prevent further damage to the machine. Plaintiff indicated that he never had back problems before working at this job, but that he now has chronic disabling back pain.

The plaintiff was treated initially by the company physician, Dr. Chris, who treated him with Motrin and imposed certain restrictions. These included lifting no more than twenty-five pounds, and no twisting, bending, or turning. However, the company did not follow through with the restrictions and plaintiff testified that he was still lifting over twenty-five pounds, i.e., loading eighty-pound grinder blades and hauling trash. The plaintiff continued to work in pain until March 2, 1990,[9] when he was assigned to organizing a cooler. Although he complained that his back was bothering him and that this task was more than his back could handle, he was given no alternative, other than to go home. The plaintiff finished the shift, in spite of increasing pain and did not return to work. He received worker's compensation benefits for seventeen weeks. These payments were stopped after Dr. Robertson pronounced him fit for work.[10]

The plaintiff petitioned for reinstatement of benefits. The magistrate granted continuing benefits after finding a work-related continuing partial disability, despite serious doubts regarding the plaintiff's credibility and the injury itself. The WCAC reversed the award, finding no competent, material, and substan-

---

[9] There seemed to be some question about this date. The plaintiff's recollection was mistaken. The plaintiff thought the date was February 2, 1990; however, the corrected date, and the one relied on by the magistrate, was March 2, 1990.

[10] J. Alan Robertson, M.D., examined the plaintiff at the request of Creative Risk Management Corporation. CRMC is Bil-Mar's insurer.

tial evidence in the record to support the award. After remand to the Court of Appeals from this Court for consideration as on leave granted, the Court of Appeals affirmed the decision of the WCAC.

The plaintiff was evaluated by a parade of doctors and chiropractors, who found little or no objective evidence of the plaintiff's back problems. We will summarize the voluminous findings of the five doctors and one chiropractor who evaluated and treated the plaintiff. The plaintiff told all the doctors that he experienced tremendous back pain, pain down both legs, headaches, anxiety, stomach problems, weight loss, inability to stand erect, difficulty standing, walking, and driving, and difficulty sleeping.

After being treated at work by Dr. Chris, plaintiff sought treatment with Dr. Street, a chiropractor in Marshall, Michigan. Dr. Street referred plaintiff to Dr. Kilpatrick, a second chiropractor, who was located closer to plaintiff's home.[11] Dr. Kilpatrick referred the plaintiff to Gary L. Miller, D.O., a neurologist, who treated the plaintiff between March 5, 1990, and May 16, 1990. Dr. Miller ordered a myriad of medical tests, including lumbar spine x-rays, a complete myelogram, and a CT scan, if indicated.

Dr. Miller found that the plaintiff had a "mild annular disk bulge at the L5-4 level and a suggestion that the left L-5 root was not filling as complete[ly]" as the right. However, after his examination, Dr. Miller concluded that this finding might account for some of the plaintiff's discomfort, but not all the other diffuse problems that he continued to experience. With the exception of this finding, the other

---

[11] Dr. Street did not testify in this matter.

tests and the clinical examination did not yield any
significant findings to support the plaintiff's com-
plaints. Dr. Miller determined that plaintiff suffered
from both persistent mechanical low back pain, likely
related to discogenic disease in the lumbar spine, and
primary fibromyalgia syndrome, which he treated
with antidepressants and muscle relaxants.[12] In his
report to Dr. Kilpatrick, Dr. Miller recommended
referring the plaintiff for biofeedback and pain-
management techniques, and to Dr. Brink for treat-
ment of depression.[13] Dr. Miller concluded that he
would not impose any restrictions on the plaintiff
returning to work, but when pressed by opposing
counsel, indicated that he might have suggested no
heavy manual work. He urged the plaintiff to be as
active as possible and to continue with physical ther-
apy and taking aspirin.

At the request of his attorney, plaintiff was
examined by Dr. James R. Glessner, a board-certified
orthopedic surgeon. Dr. Glessner found that the

---

[12] Fibromyalgia syndrome is related to an underlying depression, in
which the patient magnifies pains and symptoms that when treated, the
symptoms improve. It is defined as:

> [M]usculoskeletal pain and aching, with pain of the joints, axial
> skeleton, and muscles and neurovascular disorders being the chief
> complaints, all patients have multiple areas of local tenderness
> (tender points). Additionally, there are sleep disorders, morning
> stiffness, fatigue, subjective swelling, parathesias, and numbness.
> Headache and irritable bowel syndrome are frequently associated.
> The syndrome is usually observed between the ages of 40 and 60
> years with an at least five female to one male ratio. [Jablonski, *Dic-
> tionary of Syndromes & Eponymic Diseases*, 1991.]

Dr. Miller noted that the plaintiff began to improve on the antidepressants
and muscle relaxants, finding plaintiff's anxiety to be reduced; he gained
weight and was sleeping better.

[13] The plaintiff did not keep his appointment with Dr. Brink.

patient had a list[14] of the spine to the left that intensi-
fied with bending forward. Dr. Glessner concluded,
after his examination and further testing, that "this
man has [a] disc problem in his low back with proba-
ble nerve root irritability in the right lower limb;
indeed he may have had some nerve root compres-
sion in the past. He has no demonstrable objective
evidence of nerve root compression at present." In
addition, the x-rays of the plaintiff's lower back, CT
scans, myelogram, cervical spine, and sacroiliac joint
films, all were either negative or within normal limits.
Dr. Glessner recommended lifting restrictions of
twenty-five pounds or less, and retraining for a "less
arduous-type of occupation in the future."
Dr. Glessner noted that the list was the only objective
evidence of any nerve root irritability. On cross-
examination during deposition, he agreed that there
was no hard objective evidence of disc disease at
present other than the list. He conceded that he
based his findings on the plaintiff's physical and sub-
jective complaints.

The plaintiff was evaluated by three medical exam-
iners for the defendant. Depositions were taken from
all three. J. Alan Robertson, M.D., D.C., examined the
plaintiff on June 7, 1990. It was after this examina-
tion that benefits were discontinued. After an exten-
sive physical examination, Dr. Robertson concluded:

> Clinical examination of Mr. Goff's person on today's date
> does not demonstrate the presence of objective abnormal-
> ity, either structurally or functionally, to his musculoskele-
> tal system which would represent residuals of injury,
> regardless of their etiology.

---

[14] A "list" is a tilt to one side. *New World Dictionary*, n 5 *supra*, p 825.

> Mr. Goff is not in need of treatment to his person for residuals of injuries to have been sustained secondary to the occupational events as above described to me by Mr. Goff.
>
> From today's examination, I am unable to demonstrate the presence of objective abnormality to the person of Mr. Goff which would exclude him from the normal performance of those activities common to daily living to include personal hygienic activities, household chores, recreational activities or gainful employment activities in the field of common manual labor. Mr. Goff does not require environmental modification, personal assistance or functional limitation in the performance of these activities. Mr. Goff is not physically disabled.

Dr. Robertson opined that the plaintiff could return to unrestricted labor, and that the plaintiff engaged in symptom amplification or magnification, to the extent that the symptoms were inconsistent with the objective findings after the clinical examination.

Arnold Eckhouse, D.O., evaluated the plaintiff on July 25, 1990. Dr. Eckhouse found no objective evidence to support the plaintiff's complaints and noted the patient's nervousness. "I find that at the time of this evaluation, that all of his complaints are subjective in nature. He is extremely nervous, and there may be some functional overlay." With reference to the L4-L5 bulge, Dr. Eckhouse indicated that it is not always medically significant and is "the price that we pay for walking on two feet." Dr. Eckhouse disagreed with Dr. Glessner that the patient exhibited a disc problem with nerve root irritability and would not restrict the plaintiff's work in any way because there were no objective orthopedic findings to justify any limitations.

Dr. Leslie A. Neuman, a board-certified neurologist, examined the plaintiff on December 10, 1990. He performed electrodiagnostic testing on the plaintiff, found all the results to be within normal limits, and concluded that there was no electrodiagnostic explanation for the plaintiff's back problems. Dr. Neuman also noted that plaintiff might be embellishing his symptoms because his examination did not follow "an organic pattern of one nerve root being affected."

The magistrate found a continuing partial disability and granted a continuing award of benefits to the plaintiff. The magistrate reviewed the findings and opinions in the deposition testimony of the medical personnel who were called on to evaluate or treat the plaintiff. The magistrate also assessed the credibility of the plaintiff. Ultimately, the magistrate noted:

> This brings me to a very troublesome aspect of this case. I am convinced that Plaintiff has not only deliberately magnified his current level of symptoms, but has falsely responded to certain clinical tests to manipulate the outcome of the examination. By a way of example:
>
> During Dr. Robertson's examination, he permitted straight leg raising in the supine position to 65 degrees. At that point, he contracted his leg muscles to prevent further movement. While in the prone position, he contracted his leg muscles to prevent a knee bend from heel to buttock. That is not a physiologic response. At another point, Plaintiff deliberately "froze up" his neck muscles as soon as he realized his neck was being evaluated for movement purposes . . . .
>
> During Dr. Eckhouse's examination, he complained of pain on supine straight leg raising at 20 degrees on the right and 40 degrees on the left. Yet, while seated, he accomplished 90 degrees straight leg raising without complaint.
>
> During Dr. Neuman's examination he complained of pain in all movements with both legs, with straight leg raising

complaints at 50 degrees. He also presented "give away
weakness" in the proximal muscles of both legs with intact
strength distally. That is inconsistent with all of his history,
findings and complaints. Weakness in his hip flexors and
lateral rotators would relate to an upper lumbar
problem . . . .

Both Dr. Miller and Dr. Eckhouse observed Plaintiff to be
extremely nervous or tense and anxietous [sic]. Both
observed Plaintiff to be tremulous. Dr. Glessner observed
Plaintiff to be "quite protective" of his back. I surmise that
there is an unexplored functional component of Plaintiff's
symptoms.

The difficulty with this claim is to determine what signifi-
cance to attach to Plaintiff's embellishments. I am aware
that claimants often mistrust the compensation system and
feel that they must exaggerate their symptoms in order to
be found disabled. By the same token, claimants must pre-
ponderate with credible evidence. There is no clear road
map to the right result in this case, and if I had only Plain-
tiff's credibility to rely on, he would probably lose.

However, on the basis of the circumstances leading to
the injury, the list discovered by Dr. Glessner, and the
bulge at L4-L5, the magistrate determined that the
plaintiff should not return to unrestricted common
labor and that there should be restrictions on lifting,
bending, and twisting. Thus, the magistrate found the
plaintiff to have a partial continuing work-related dis-
ability and ordered that continuing disability benefits
be paid until further order of the bureau.[15]

Bil-Mar appealed the decision to the WCAC on the
grounds that there was not competent, material, and
substantial evidence on the record to support the
magistrate's finding of a continuing work-related disa-

---

[15] This order included the cost of reasonable and necessary medical
care, but not chiropractic services after June 7, 1990.

bility arising out of the injuries occurring in October, 1989, and March, 1990. The WCAC agreed and reversed the award of benefits. The commission held that the magistrate's reliance on Dr. Glessner's findings was misplaced and unreasonable because the doctor's conclusion was based on the plaintiff's own subjective account. The WCAC quoted from Dr. Glessner's report:

> In summary, I think this man has disc problems in his low back with probable nerve root irritability in the right lower limb; indeed he may have had some nerve root compression in the past. He has no demonstrable objective evidence of nerve root compression at present. *If his history was correct*, the intense activity he was subjected to last October is probably responsible for his problem. [1993 Mich ACO 166, 169 (emphasis in original).]

The commission also discussed the L4-L5 bulge that four physicians concluded was not significant and could not adequately explain all the plaintiff's complaints. *Id.* at 169-170. On the basis of lack of hard objective data in the record, the plaintiff's embellishment of his symptoms, and the magistrate's finding that the patient was somewhat incredible, the WCAC reversed the findings of the magistrate on the basis of a lack of competent, material, and substantial evidence in the record. We agree and note further that the application of the *Holden* test supports this result.

The WCAC carefully reviewed the record, including the opinion of the magistrate, the medical evidence, and the opinions of the doctors. It noted at the outset the magistrate's concern with the plaintiff's lack of credibility: "[I]f I had only Plaintiff's credibility to rely on, he would probably lose." *Id.* at 167. The WCAC then pointed out that the magistrate relied on the findings

of one examining physician who, not only found no real objective evidence to explain the plaintiff's range of complaints, except for a list in his back, but based his opinion on the plaintiff's physical and subjective complaints. It is true that a magistrate can rely on the medical evidence found to be the most persuasive if there is a reasonable basis for that choice. *Clark v Lakeview Community Nursing Home*, 1992 Mich ACO 565. However, in this case, the WCAC concluded that the magistrate's reliance on Dr. Glessner's testimony was misplaced and unreasonable because the credibility of the information supplied to Dr. Glessner was suspect. This only served to undermine his testimony and supports the WCAC's finding that the magistrate's decision was not based on competent, material, or substantial record evidence.

The WCAC reversed the decision of the magistrate after noting the plaintiff's obvious lack of credibility, the doctors' findings that the plaintiff engaged in obvious symptom magnification, the plaintiff's attempts to control the outcome of his physical examinations, and the doctors' inability to find any objective explanation for the sum total of the plaintiff's complaints. This decision was based on a qualitative and quantitative analysis of the whole record. To be fair, the doctors all noted the L4-L5 bulge, but indicated that this is not necessarily abnormal. The only other objective indication of any problem was the list noted by Dr. Glessner, but even in his medical opinion, there was no "demonstrable objective evidence" of a nerve root problem. Therefore, the findings of the magistrate could not be conclusive in this case because the magistrate's decision was not reasonably supported by any material, competent, and substan-

tial evidence. Consequently, the WCAC correctly determined that it was not bound by the magistrate's decision. Finally, we note that the WCAC provided an adequate reason for reversing the decision of the magistrate. The WCAC reviewed the whole record, including the findings of the magistrate and carefully and thoughtfully detailed the reasons for its reversal.

The Court of Appeals noted the proper but limited scope of its own review power. That is a review of only the findings of fact by the WCAC that are conclusive if supported by competent evidence on the whole record. In a brief opinion, the Court of Appeals evaluated the WCAC determination according to the guidelines stated in *Holden* and affirmed the decision of the WCAC. We affirm and hold that the WCAC properly applied the substantial evidence on the record standard and was justified in finding that the magistrate's decision was not founded on competent, material, and substantial evidence and therefore could not be considered conclusive.[16]

B

*DUDLEY v MORRISON INDUSTRIAL EQUIPMENT CO*

In *Dudley,* the magistrate granted an open award of benefits to the complainant after he suffered a back injury. The WCAC reversed for lack of competent, material, and substantial evidence on the record, and

---

[16] A recent decision by the Court of Appeals illustrates the correct analysis that the Court must employ in determining whether the WCAC exceeded its reviewing authority. In a thoughtful opinion by Judge MARKMAN, the Court of Appeals affirmed the reversal of the magistrate's award of benefits by the WCAC. Correctly applying the guidelines from *Holden,* the Court of Appeals held that the WCAC properly found that the magistrate's decision was not based on substantial evidence. See *York v Wayne Co Sheriff's Dep't,* 219 Mich App 370; 556 NW2d 882 (1996).

because it concluded that the magistrate should not have found the plaintiff to be a credible witness. The Court of Appeals affirmed the decision of the WCAC. We hold that the WCAC exceeded its authority and erred in reversing the decision of the magistrate. Accordingly, we reverse the Court of Appeals and reinstate the decision of the magistrate.

. George Dudley began working at Morrison Industrial Equipment Company in April, 1968, as a heavy equipment repairman. He previously spent twenty years in the military repairing forklifts. By his own reports, he was in "A-1 condition" when he started at Morrison. He injured himself twice, while working on March 4, 1988. The first injury occurred when he reached for his sixty-pound tool box, after parking his truck. When he began to close the door of his truck, his foot slipped and he kicked his back. The next injury occurred later the same day while he was working on a forklift. In the process of checking for the source of an oil leak, he twisted and crawled underneath the lift in such a manner that his back started to hurt, so much so that it took him five minutes to get up. The plaintiff reported the injury to his supervisor and continued to work despite constant pain.

The plaintiff sought medical help with his family doctor, Dr. William Hughes. Dr. Hughes prescribed anti-inflammatory drugs and muscle relaxers, and told him to stay home from work and rest. He returned to work on July 18, 1988, and continued to work despite his pain until November 1988, when he reported loss of feeling in his right leg. Plaintiff also indicated that he was still lifting in excess of one hundred pounds. The plaintiff had received spinal injections for one

month that relieved some of his pain, but, by May 24, 1989, his last day of work, the pain became so unbearable that he could not bend. This worsened after he lifted a 135-pound transmission from a truck. He did not return to work after this.

Mr. Dudley was seen by three doctors who testified by deposition. Dr. Hughes had treated plaintiff in his capacity as family physician for ten years. Dr. Hughes had examined the plaintiff in 1980 and noted that at that time, he had no "specific chief complaints." However, during the course of that examination in response to the doctor's inquiries, plaintiff told him that from time to time he experienced back stiffness. This was not a "presenting complaint, but were complaints elicited in the process of [the] exam." This stiffness, however, did not keep the plaintiff from work, was not disabling, and was nonacute.

The plaintiff was treated by Dr. Hughes on March 8, shortly after his injuries at work. The doctor noted that the aggravating factor was the original work injury and that "before the day in question, 3-4-[88], he was able to work, and after the day in question, he was unable to work without pain." At that time, Dr. Hughes made two diagnoses: acute lumbar myositis and degenerative lumbar disease.[17] Dr. Hughes took the plaintiff off work temporarily. When the plaintiff went back to work it was with a fifty-pound lifting restriction. He also recommended that the plaintiff do bench work and small engine repair.

---

[17] Lumbar myositis is pain inflammation and stiffness along the lumbar muscle groups of the lower back. Degenerative lumbar disease is arthritis.

Dr. Hughes referred the plaintiff to Robert Schneeberger, D.O., to evaluate plaintiff's back. Dr. Schneeberger noted that it is not uncommon for a man plaintiff's age to have some arthritis, and that the strain and sprain he suffered at the time of his injury aggravated the underlying problem, which then became symptomatic.

At the defendant's request, Dr. Arnold Eckhouse examined the plaintiff and concurred that he suffered from degenerative arthritis attributable to the aging process and everyday wear and tear. However, Dr. Eckhouse admitted that certain activities, like "bending, twisting, reaching, pulling, working in awkward positions, crawling," if frequent and regular, could place additional stress on the spine and contribute to the degenerative process.

After considering the depositions and the testimony of the plaintiff, the magistrate granted an open award of benefits, holding:

> I found Plaintiff to be a credible witness who did work as much as he could following his March 4, 1988 injury. I accept that he could no longer continue working after May 24, 1989 and that he has continuing disabling pain through the present. While Plaintiff did have a specific event injury on March 4, 1988, I find his primary problem is a result [sic, of] 40 years of very heavy labor. I find that this heavy labor he did in the military and at Defendant significantly aggravated and contributed to the wear and tear arthritis in his low back.

The WCAC reversed the decision of the magistrate on the basis of lack of competent, material, and substantial evidence on the whole record for two reasons. First, the WCAC found that plaintiff was not a credible witness because of discrepancies in the histories that

he gave to Drs. Hughes and Schneeberger. The plaintiff reported to Dr. Hughes that he developed sudden pain when he tried to get out from under the forklift; he told Dr. Schneeberger that the injury occurred while he was lifting and suffered such pain it threw him to his knees.

Second, the WCAC noted that the plaintiff failed to mention previous back difficulty. He did not mention that the first time he saw Dr. Hughes in 1980 he reported some limitation of motion in the lumbar spine. Nor did he mention that on February 17, 1988, one month before his injury, he complained of "some mild low back discomfort" to Lenny Kurello, D.O., who had treated him for prostate cancer.[18] Plaintiff had monthly visits with Dr. Kurello to monitor his progress after the prostate surgery. During this particular visit, he complained of some paresthesia, a burning sensation of the skin, on his legs. The doctor informed the plaintiff that this was a mild muscle spasm and to treat it with aspirin and a heating pad. The doctor also noted that the "[n]eurologic exam of the lower extremities shows entirely normal sensory motor function . . . ." The plaintiff did, however, testify upon questioning that he had some pain in the back once in a while "but nothing that was causing any disability," and that he had noticed some numbness and tingling in his legs, but did not think it was excessive, and it did not keep him from working.

On the basis of the plaintiff's inconsistent accounts to the doctors and his previous back discomfort, the WCAC found that there was no evidence to support a finding that plaintiff's injury was work-related or that

---

[18] The prostate surgery took place during the summer of 1987.

the employment significantly contributed to or aggravated his condition. The WCAC found further that the plaintiff's condition was progressive in nature and that the medical evidence failed to substantiate workplace aggravation and, accordingly, reversed the award. The Court of Appeals agreed and held:

> Plaintiff's history of the March 4, 1988, injury was inconsistent. Dr. Schneeberger's testimony to the effect that plaintiff's condition was aggravated by the injury was based in large part on the inaccurate history given by plaintiff. Further, the magistrate failed to analyze the impact of plaintiff's preexisting condition on his alleged disability, in spite of the fact that each physician acknowledged the existence of his degenerative arthritis. The WCAC found that, given plaintiff's lack of credibility regarding the March 4, 1988 injury, the evidence supported a finding that plaintiff's condition was related to the aging process. [Unpublished opinion per curiam, issued June 23, 1995 (Docket No. 168027).]

We disagree. The WCAC exceeded the scope of its statutory review power and erred in reversing the fact finding of the magistrate.

The magistrate found the witness to be credible, noting in his opinion that the plaintiff did have treatment for lower back stiffness in 1980, but that this was not the reason for the doctor visit and did not cause the plaintiff to miss work. The magistrate noted further that the plaintiff had no problems performing fully on the job until after the March 4 injury. Further, the plaintiff indicated that the new pain was in addition to the previously noted back discomfort. In his opinion, the magistrate only noted the injury that occurred when the plaintiff twisted his back getting out from under the forklift, although the record clearly indicates that there might have been a second

injury that occurred when the plaintiff grabbed his tool box and kicked his back. The magistrate, relying on the diagnosis of Dr. Hughes, concluded that the heavy labor plaintiff performed in the military and for the defendant "significantly aggravated and contributed to the wear and tear arthritis in his low back." In this case, the magistrate chose to rely on Dr. Hughes, the treating physician,[19] and awarded the plaintiff benefits.

In reversing, the WCAC noted that it generally defers to the magistrate's finding with regard to the plaintiff's credibility. It then concluded that here it could not do so because his testimony was at times inconsistent and suspect. The WCAC concluded that if the plaintiff was giving inconsistent histories to different doctors, then the credibility of these medical opinions would be undermined. "We are cognizant of the fact that the Magistrate need not discuss ever[y] single aspect of the evidence presented below and that he is free to accept the medical testimony he finds most persuasive. However, there must be a rational basis for his reliance upon the same in order for us to affirm . . . ." 1993 Mich ACO 1295, 1297.

The Court of Appeals affirmed the decision of the WCAC. We reverse both the decisions of the Court of

---

[19] Recall, however, the deposition testimony of the two other examining physicians, which is not mentioned in the magistrate's opinion but supports his finding nonetheless. Both Drs. Schneeberger and Eckhouse found it not unusual that a man of the plaintiff's age would have some arthritis. Dr. Schneeberger opined that the strain and sprain suffered at the time of the injury aggravated the underlying problem, which then became symptomatic. Dr. Eckhouse opined that the arthritis was caused by the aging process and everyday wear and tear, although even he admitted that frequent and regular bending, twisting, reaching, pulling, crawling, and working in awkward positions could place additional stress on the spine and contribute to the degenerative process. See *ante* at 531.

Appeals and the WCAC, and hold that the WCAC misapplied the substantial evidence standard and that the Court of Appeals erred in affirming. In applying our guidelines, we find that, in this case, the WCAC improperly substituted its judgment for that of the magistrate, and we find its conclusion untenable.

The WCAC examined the record but ignored certain important factors considered by the magistrate. None of the doctors disputed the fact that there was an underlying arthritic condition. However, they all ultimately concluded, though maybe not all eagerly, that the type of heavy labor that the plaintiff performed on a daily basis certainly could contribute to the condition and cause disabling symptoms where previously there were none. The magistrate noted that the plaintiff worked as much as he could after the March 4 injury and could not work because of disabling pain afterward. Unlike *Goff*, this case does not present a plaintiff with no objective evidence of a disabling condition. To the contrary, Mr. Dudley is a plaintiff with an underlying arthritic condition that, before the injury, was simply not disabling at all. The medical testimony does provide evidence of significant workplace aggravation of the underlying arthritic condition. The WCAC did not base its decision on the evidence in the record as a whole and improperly substituted its judgment for that of the magistrate. The reliance of the magistrate on Dr. Hughes' opinion as the treating physician was not unreasonable, and the magistrate's finding that the previously nondisabling progressive arthritic disease process was significantly aggravated by plaintiff's work was clearly based on

competent, material, and substantial evidence on the record as a whole.[20]

The WCAC must be cognizant of the deference due the magistrate. *Holden, supra.* We find that the WCAC gave only passing lip service to this requirement. It ignored the medical opinions of the treating and examining physicians and rejected the credibility determination of the magistrate in a wholesale manner, in light of objective, palpable, and reliable objective evidence. Consequently, the WCAC both misapprehended and misapplied the substantial evidence standard. Finally, the WCAC did not give an adequate reason grounded in the record for reversing the decision of the magistrate. Its conclusion did not reflect careful consideration of the whole record. Instead, it ignores the physicians' conclusions and rejects the credibility determination of the magistrate. Because the findings of the magistrate were reasonably made on the basis of competent, material, and substantial evidence, they are conclusive, and the WCAC erred in overturning the award and impermissibly substituting its judgment for that of the magistrate. If the magistrate finds the witness to be credible, that judgment should not be overturned because the accounts of the

---

[20] The WCAC makes much of what it says are inconsistent accounts of the injury by the plaintiff to the doctors and the fact that the plaintiff concealed his ongoing back problems. However, the record indicates two incidents occurring on the same day that may have contributed to the patient's injury. The first occurred when he lifted his tool box, the second when he was under the forklift. The plaintiff readily testified about both of these, and the magistrate had no problem reconciling the fact that Drs. Schneeberger and Hughes did not record them in an identical manner. Further, the WCAC seemed convinced that the plaintiff was deliberately concealing previous back problems. The plaintiff did discuss his previous back difficulty when questioned and noted that at no time were these problems disabling, nor did they ever reach a point where he could not work.

witness' history as reported by the examining physicians are inconsistent merely because the WCAC disagrees.

In its opinion, the Court of Appeals merely restated the findings of fact of the WCAC and summarily affirmed the decision of the WCAC.[21] It did not adequately assess whether the WCAC properly exercised its reviewing power. Nor did it properly consider issues of credibility determined by the magistrate, evidence accepted and rejected by both the magistrate and the WCAC, or the care, reasoning, and analysis with which the magistrate and WCAC reached their conclusions. Consequently, the Court of Appeals erred in affirming the decision of the WCAC overturning the award of the magistrate.

---

[21] The Court of Appeals concluded:

> In this case, the WCAC found that the magistrate's credibility determination was not supported by the requisite substantial evidence. This Court reviews the WCAC's finding to determine if it is supported by competent evidence. *Holden, supra.* We conclude that the WCAC's finding is so supported. Plaintiff's history of the March 4, 1988, injury was inconsistent. Dr. Schneeberger's testimony to the effect that plaintiff's condition was aggravated by the injury was based in large part on the inaccurate history given by plaintiff. Further, the magistrate failed to analyze the impact of plaintiff's preexisting condition on his alleged disability, in spite of the fact that each physician acknowledged the existence of his degenerative arthritis. The WCAC found that, given plaintiff's lack of credibility regarding the March 4, 1988 injury, the evidence supported a finding that plaintiff's condition was related to the aging process. The physicians' testimony regarding plaintiff's preexisting condition supported this finding.

One judge dissented, agreeing with the dissent to the WCAC opinion that the magistrate's award should be reinstated.

III

CONCLUSION

If the magistrate's decision is reasonably supported in the record by any competent, material, and substantial evidence, then it is conclusive and the WCAC must affirm. If it does not, it is exceeding the scope of its reviewing power and impermissibly substituting its judgment for the magistrate's. In reviewing the magistrate's decision, the WCAC must do so with sensitivity and deference toward the findings and conclusions of the magistrate in its assessment of the record. If in its review the WCAC finds that the magistrate did not rely on competent evidence, it must carefully detail its findings of fact and the reasons for its findings grounded in the record. If after such careful review of the record the WCAC finds that the magistrate's determination was not made on the basis of substantial evidence and is therefore not conclusive, then it is free to make its own findings. In such circumstances, the findings of fact of the WCAC are conclusive if the commission was acting within its powers. Ultimately, the role of the Court of Appeals and this Court is only to evaluate whether the WCAC exceeded its authority.

These cases illustrate several aspects of the process of reviewing the determinations reached in administrative proceedings. First, these cases address the definition of the competent, material, and substantial evidence standard of review. Second, these cases force us to confront the scope of authority of the WCAC and, when it is permissible, to reverse a decision of the presiding magistrate. Third is the role of the judiciary in reviewing the determinations of the WCAC. Fourth and finally, though not by any means

least of all, is the fact that the reviewing tribunals walk a tightrope between conducting a less than de novo review, yet performing one that considers qualitatively and quantitatively all the evidence for and against the determination. We are cognizant of the difficulty inherent in this task.

However, these cases represent one instance in which the WCAC correctly applied the standard in its decision to reverse an award and one in which it exceeded its authority in doing so. These cases also illustrate one instance where the Court of Appeals correctly applied the appropriate tests and one in which it did not. We believe that these cases further define and clarify both the standards and the process of administrative and judicial review delineated in *Holden*. We are hopeful that these illustrations will serve as a more functional guide in future cases.

BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with MALLETT, C.J.

WEAVER, J. (*concurring in part and dissenting in part*). While I agree with the majority to affirm the decision of the Court of Appeals in *Goff v Bil-Mar Foods, Inc*,[1] I dissent from the majority's holding in *Dudley v Morrison Industrial Equipment Co*, and would affirm the decision of the Court of Appeals[2] in that case. Further, I write separately to dissent from the following standard established by the majority:

---

[1] Unpublished opinion per curiam, issued April 12, 1995 (Docket No. 175556).

[2] Unpublished opinion per curiam, issued June 23, 1995 (Docket No. 168027).

[W]here a party claims that the WCAC has exceeded its power by reversing the magistrate, *meaningful review must begin with the magistrate's decision,* because if competent, material, and substantial evidence based on the whole record supports the magistrate's decision, the WCAC need go no further. If it does, the WCAC is exceeding its authority. [*Ante* at 513 (emphasis added).]

As a result of its adoption of this standard, I find the majority opinion will have the effect of undermining this Court's decision in *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992), and rendering it virtually useless, increasing the backlog of reviewing courts, and depriving the Worker's Compensation Appellate Commission of its authority to conduct a qualitative, as well as a quantitative, review of the whole record pursuant to MCL 418.861a(13); MSA 17.237(861a)(13).[3] Moreover, while I certainly agree that the commission's review of a magistrate's decision is less than de novo, I find that the majority's standard will expand judicial appellate review to an extreme unintended by the Legislature and contrary to the legislative scheme for review of worker's compensation awards established in MCL 418.861a *et seq.*; MSA 17.237(861a) *et seq.*[4] In effect, the majority's

---

[3] MCL 418.861a(13); MSA 17.237(861a)(13) provides:

A review of the evidence pursuant to this section shall include both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review.

[4] Under the majority's holding a claimant can obtain judicial review merely by asserting that the commission did not act within "its powers," in which case, the appellate court will assume the reviewing function of the commission under MCL 418.861a(13); MSA 17.237(861a)(13), a provision that the statute did not intend apply to any appellate court. Instead, the statute clearly requires that an appellate court affirm the judgment of the commission absent fraud or a finding that the commission acted without authority. MCL 418.861a(14); MSA 17.237(861a)(14).

position has appellate courts stepping into the shoes of the commission by conducting a qualitative and quantitative review of the whole record that the Legislature only intended the commission perform. In so doing, the majority, in the name of further explaining this Court's *Holden* analysis, has so deviated from *Holden* as to render that decision virtually useless. Furthermore, the majority opinion impliedly discourages the commission from conducting its statutorily authorized qualitative review of the evidence, which I believe includes assessments regarding the credibility of witnesses under MCL 418.861a(13); MSA 17.237(861a)(13).[5]

I would find that the commission's role is more significant than the majority allows and that this Court's decision in *Holden* sufficiently describes the appropriate standard of review of the commission by the judiciary. Pursuant to the express language in MCL 418.861a(14); MSA 17.237(861a)(14) reviewing courts have authority to reverse the commission's findings of fact only where there is fraud or a finding that the

---

[5] MCL 418.861a(13); MSA 17.237(861a)(13) provides:

A review of the evidence pursuant to this section shall include both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review.

The implication that the commission should not make credibility determinations contrary to the magistrates' assessments stems from the majority's disposition of these two cases, *Goff* and *Dudley*. In *Goff*, where the magistrate specifically found the claimant to be incredible, this Court found "the findings of the magistrate could not be conclusive . . . . Consequently, the WCAC correctly determined that it was not bound by the magistrate's decision." *Ante* at 527-528.

Whereas, in *Dudley*, where the magistrate found plaintiff credible, this Court found that the commission acted beyond the scope of its authority by conducting a qualitative review of the whole record that resulted in finding claimant's testimony to be inconsistent and unreliable.

commission acted without authority, or outside the scope of its powers. Specifically, the judiciary should reverse the commission's decision only when the commission grossly misapplies the substantial evidence standard in its review of the magistrate. *Holden* at 269.

Application of the *Holden* standard to the instant cases allows me to concur with the majority's affirmance of the Court of Appeals in *Goff v Bil-Mar Foods, Inc,* but requires that I dissent with respect to the disposition of *Dudley v Morrison Industrial Equipment Co.* I would affirm the decision of the Court of Appeals in *Dudley,* which found that the commission properly reversed the magistrate's award in that case.

I

In finding that the majority curtails the commission's authority contrary to the express mandate of the statute, I note the following statutory provisions that define the duties and powers of the commission:

(10) *The commission . . . , may adopt, in whole or in part, the order and opinion of the worker's compensation magistrate* as the order and opinion of the commission.

(11) The commission . . . shall review only those specific findings of fact or conclusions of law that the parties have requested be reviewed.

(12) The commission . . . may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined that the record is insufficient for purposes of review.

(13) *A review* of the evidence pursuant to this section *shall include both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review.*

(14) *The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be*

*conclusive.* [MCL 418.861a(10)-(14);  MSA 17.237(861a)(10)-
(14) (emphasis added).]

Clearly, according to the plain language of MCL
418.861a(13);  MSA 17.237(861a)(13)  the commission
is required to conduct a qualitative review of the
whole record, which would include making and
reviewing the magistrate's credibility determinations.
Accordingly, I would agree with the Court of Appeals
in *Aaron v Michigan Boiler & Engineering*, 185 Mich
App 687, 701-702; 462 NW2d 821 (1990),  and find:

> [E]ven though the appellate commission should give def-
> erence to the magistrate regarding credibility issues as to
> witnesses who appeared live before the magistrate, *the*
> *appellate commission could disagree with the magistrate's*
> *findings on credibility since its review is both qualitative*
> *and quantitative, provided the appellate commission had*
> *given deference to the magistrate's superior position in*
> *viewing the witness.* [Citation omitted; emphasis added.][6]

In this regard, while the majority opinion cites *York*
*v Wayne Co Sheriff's Dep't*, 219 Mich App 370; 556
NW2d 882 (1996),  as an illustration of correct judicial
review, and I agree it is, it seems to me that the
majority fails to adopt the standard articulated in that

---

[6] Regarding credibility assessments in *Aaron v Michigan Boiler &*
*Engineering, supra* at 701, the Court points out:

*MERC v Detroit Symphony Orchestra* [393 Mich 116; 223 NW2d
283 (1974)] involved credibility issues and deference to the trial
examiner who heard the testimony firsthand. In most workers'
compensation cases, the expert testimony is by deposition so the
magistrate does not see and hear the expert witnesses. Therefore,
the appellate commission could reasonably conclude that a magis-
trate's decision based on expert testimony given by way of deposi-
tion was not entitled to any deference with regard to credibility
since both the magistrate and the appellate commission reviewed a
written record of the expert witness' testimony.

case. Furthermore, it appears that *York* points out the difficulties inherent in the position that the majority has now adopted. Indeed, the *York* Court explained that

> judicial review of a WCAC decision is to be of the findings of fact made by the WCAC and not the findings of fact made by the magistrate and that the findings of fact made by the WCAC are conclusive if there is any competent evidence in the record to support those findings. In particular, the Supreme Court specifically rejected the proposition that the WCAC's application of the substantial evidence test is a question of law subject to review de novo on appeal, allowing reviewing courts to again review the administrative agency's findings for substantial evidence, because that would make the scope of judicial review identical to that of the WCAC itself, contrary to the clear intent of the Legislature.
>
> \*     \*     \*
>
> However, in order for this Court to conclude that the WCAC exceeded its reviewing powers because the magistrate's findings were supported by the requisite substantial evidence on the whole record, this Court would have to engage in the very same kind of review de novo of the magistrate's findings for substantial evidence that the Supreme Court specifically rejected as inappropriate in *Holden*, *supra*. [*Id.* at 378-380 (citations omitted).][7]

As this quotation points out, not only is the majority's analysis contrary to the respective statutory roles

---

[7] The *Aaron* Court also found that

it is inconsistent to view current statutory provisions that give the appellate commission less reviewing power than the appeal board had as somehow increasing the scope of review of the Court of Appeals. Actually, the decrease in power at the administrative review level constitutes less, not more, reason to expand this Court's reviewing authority. [*Id.* at 706.]

of the commission and judiciary, but its standard is contrary to this Court's own finding in *Holden v Ford Motor Co, supra.*[8] In that case, we held:

> *The Legislature,* by employing the language of the constitution in stating that the fact finding of the WCAC is final subject to limited judicial review, *made clear that judicial review by the Court of Appeals or this Court of a WCAC decision is to be of the findings of fact made by the WCAC and not the findings of fact made by the magistrate.* And the findings of fact made by the WCAC are conclusive if there is any competent evidence to support them. [*Id.* at 263 (emphasis added).][9]

---

[8] In *Holden*, this Court acknowledged the differing respective roles of the appellate administrative review and the appellate reviewing courts. The *Holden* majority clearly noted that the

substantial evidence standard provides for administrative appellate review more deferential to the hearing officer's decision than de novo review, but for more searching review by the WCAC than judicial review under the "any evidence standard." The constitution provides for such limited judicial review:

"Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law. [Const 1963, art 6, § 28.]" [*Holden* at 261-262.]

[9] This Court's holding in *Holden* was based, in part, on the following persuasive reasoning:

*[S]ome latitude must be given the WCAC, should it find that the magistrate's findings of fact are not supported by "competent, material, and substantial evidence on the whole record," if there is to be any effective appellate review, administrative or judicial, at all.* And that if the appellate courts were not to allow such latitude to the WCAC, they would find that they were increasingly called upon to perform the appellate reviewing function so that there would be effective appellate review at some level.

Due deference should be given to the administrative expertise of the WCAC, as well as . . . the magistrate. *Recognition that a WCAC panel brings to the table the administrative expertise of more than one person may, depending on the factual or legal issue, be appropriate. [Id.* at 268 (emphasis added).]

The standard articulated by the majority in this case bears little resemblance to the *Holden* standard.[10] In fact, it would seem that in its purported attempt to further clarify the *Holden* standard, this Court has effectively rendered *Holden* virtually useless.

II

This Court's failure to exercise restraint in this case will further aggravate the problems the Legislature sought to ameliorate in enacting the 1985 amendments of the act. In *Aaron v Michigan Boiler & Engineering, supra,* Chief Judge DANHOF warned of the potential backlog that would be created if reviewing courts usurped the review of the magistrate accorded the commission in the statute.

> There is no reason to think . . . that this savings in appellate time at the administrative level was intended to be at the expense of the Court of Appeals. It is neither necessary nor desirable for this Court to make an independent review of the whole record to determine if the appellate commission erred in finding that the magistrate's findings of fact were not supported by competent, material, and substantial evidence on the whole record.
>
> *       *       *
>
> The result of this would be an increase in this Court's backlog and an increase in the appellate commission's backlog, neither of which comports with the intention of the Legislature when it adopted § 861a.

---

[10] This is evident when one considers the four-part guide this Court established in *Holden* to explain the standard for reviewing commission decisions established in that case. That four-part guide included the provision that the commission did not "misapprehend or grossly misapply" the substantial evidence standard. *Id.* at 269.

*     *     *

Although the standard of review employed by the appellate commission is different than the standard of review employed by the appeal board, the reviewing responsibilities of this Court with regard to workers' compensation cases has not changed. That is, this Court will review the appellate commission's opinions, as it did the appeal board's opinions, for errors of law. Section 861a(14), *supra.* If there is any competent evidence to support an appellate commission finding that the magistrate's findings of fact were not supported by competent, material, and substantial evidence on the whole record, then this Court will affirm. [*Aaron* at 706-708.]

In light of Chief Judge DANHOF's wise remarks, I would not expand upon the self-restrained standard established by this Court in *Holden* and would find that the majority's holding impedes the statutorily prescribed role of the commission as an administrative appellate entity. Moreover, I maintain that a more expanded role for judicial review can, and indeed should, only be defined by the Legislature.

III

Accordingly, I would find that this Court's decision in *Holden* sufficiently describes the standard of review of the magistrate by the commission, and of the commission by a reviewing court as follows:

If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not "misapprehend or grossly misapply" the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member WCAC

of decisions of thirty magistrates, and bestowed on the
WCAC final fact-finding responsibility subject to constitution-
ally limited judicial review. [*Id.* at 269.]

Pursuant to this *Holden* analysis, I would find that
reviewing courts should affirm the commission's deci-
sion when the commission clearly indicates that it
was cognizant of the due deference it must accord
the magistrate. The commission's decision should
only be altered or reversed by an appellate court if
the appellate court can show that the commission
grossly misapplied the substantial evidence standard
in its review of the magistrate and, in so doing,
exceeded its statutory authority. MCL 418.861a(14);
MSA 17.237(861a)(14).

IV

When applied to the facts in *Dudley*, I would find
that the *Holden* analysis requires a determination that
the commission did not exceed its authority by
rejecting the magistrate's finding regarding credibility
because it was not supported by the requisite sub-
stantial evidence standard. MCL 418.861a(3);  MSA
17.237(861a)(3).  Upon reviewing the record, I concur
with the Court of Appeals that

[t]his Court reviews the WCAC's finding to determine if it is
supported by competent evidence. We conclude that the
WCAC's finding is so supported. Plaintiff's history of the
March 4, 1988 injury was inconsistent. Dr. Schneeberger's
testimony to the effect that plaintiff's condition was aggra-
vated by the injury was based in large part on the inaccu-
rate history given by plaintiff. Further, the magistrate failed
to analyze the impact of plaintiff's preexisting condition on
his alleged disability, in spite of the fact that each physician
acknowledged the existence of his degenerative arthritis.
The WCAC found that given plaintiff's lack of credibility

regarding the March 4, 1988 injury, the evidence supported a finding that plaintiff's condition was related to the aging process. The physicians' testimony regarding plaintiff's pre-existing condition supported this finding.

*    *    *

Further, competent evidence supported the finding that plaintiff's condition was related to the aging process rather than to his employment. [Unpublished opinion per curiam, issued June 23, 1995 (Docket No. 168027), slip op at 2.]

I, therefore, dissent from the majority opinion with respect to its holding in *Dudley v Morrison Industrial Equipment Co*, and would affirm the Court of Appeals affirmance of the commission in that case.

RILEY, J., concurred with WEAVER, J.

KELLY, J., took no part in the decision of this case.