VAN DEUSEN v TRI-COUNTY DISTRIBUTING, INC (ON REMAND)

Docket No. 184511. Submitted August 22, 1996, at Detroit. Decided January 27, 1998, at 9:10 A.M. Leave to appeal sought.

Edmund D. Van Deusen sought worker's disability compensation benefits for a back injury allegedly caused by moving a vending machine in the course of his employment with Tri-County Distributing, Inc. Tri-County and its insurer, Farm Bureau Insurance Company, voluntarily paid benefits until 1990, when they sought a hearing with respect to the question whether the disability, if any, was the result of a preexisting condition rather than as a result of Van Deusen's employment with Tri-County. Tri-County and Farm Bureau also sought to recoup benefits that had already been paid. Following a hearing, the magistrate entered an open award of benefits, finding that Van Deusen continued to be disabled and that the disability was a result of an injury suffered in the course of his employment by Tri-County. The Worker's Compensation Appellate Commission reversed the decision of the magistrate, holding that the magistrate abused his discretion by failing to quash the deposition of one of Van Deusen's medical experts on the basis that it had not been taken in a timely manner and finding that the magistrate's finding of a work-related disability was not supported by competent, material, and substantial evidence, because the testimony of Van Deusen and his other medical expert was not reliable. Van Deusen sought leave to appeal to the Court of Appeals, which was denied. Van Deusen then sought leave to appeal to the Supreme Court, which, in lieu of granting leave, remanded the matter to the Court of Appeals for consideration as on leave granted. 448 Mich 887 (1995).

On remand, the Court of Appeals held:

1. The appellate commission erred in holding that the magistrate abused his discretion in finding that the deposition of one of Van Deusen's expert witnesses had been taken in accordance with the requirement of 1979 AC, R 408.40f(a)(1), which requires that the depositions of a plaintiff's medical experts be scheduled and taken "not less than 20 days before the trial date." The trial date referred to in the rule is the date upon which the trial begins. Because the deposition was taken more than twenty days before the trial began,

it was timely, notwithstanding that it had not been taken twenty or more days before the originally scheduled trial date.

2. The appellate commission properly concluded that the magistrate's determination that Van Deusen had suffered a work-related injury that resulted in a disability and that the work-related disability had continued was not supported by competent, material, and substantial evidence. The appellate commission properly found that Van Deusen's testimony was not persuasive because of the numerous contradictory statements he made concerning the onset and cause of his present back condition and that the testimony of the chiropractor who treated Van Deusen for most of the time preceding the hearing was not persuasive because of the chiropractor's admitted alteration of his records to conform to Van Deusen's claims. The appellate commission further properly found that the deposition testimony that was ruled inadmissible as untimely was not persuasive with respect to the question of the cause of Van Deusen's back condition because any conclusions of that doctor relative to causation necessarily rested on the reliability of the statements made by Van Deusen to the doctor. Because of the absence of any reliable evidence on the record concerning the question of the cause of Van Deusen's back condition and because of the deposition testimony of Tri-County's medical experts that the condition was caused by age, the appellate commission properly exercised its scope of review and properly reversed the decision of the magistrate granting benefits.

Affirmed.

JANSEN, J., dissenting in part, stated that the appellate commission erred not only in finding that the magistrate erred in failing to quash the one deposition as not being timely but also in finding that the magistrate's decision was not supported by competent, material, and sufficient evidence on the record. The appellate commission's review is not de novo, and it may not substitute its findings for that of the magistrate. Because the commission merely substituted its findings for those of the magistrate, the decision of the appellate commission should be reversed, and the decision of the magistrate should be reinstated.

WORKER'S COMPENSATION — HEARINGS — DEPOSITIONS OF EXPERT WITNESSES — ADMINISTRATIVE RULES.

The administrative rule relating to practice in worker's disability compensation hearings that requires that the deposition of a plaintiff's expert witness be scheduled and taken not less than twenty days before trial is satisfied if the deposition is taken at least twenty days before the trial actually begins, notwithstanding that it may

have been taken less than twenty days before the trial was originally scheduled (1979 AC, R 408.40f[a][i]).

*Bindes & Gilbert* (by *Gary Goolsby*, of Counsel), for the plaintiff.

*James W. Vihtelic*, for the defendants.

ON REMAND

Before: CORRIGAN, C.J., and JANSEN and M. WARSHAWSKY*, JJ.

CORRIGAN, C.J. On remand from our Supreme Court, plaintiff appeals by leave from a decision of the Worker's Compensation Appellate Commission (WCAC) reversing a magistrate's award of benefits. 448 Mich 887 (1995). We affirm.

I

Plaintiff first argues that the WCAC erred in determining that the magistrate abused his discretion in denying defendants' motion to quash Dr. Brenda Sanford's deposition on the ground that plaintiff did not comply with 1979 AC, R 408.40f(a)(i)     (hereafter referred to as Rule 10f). We agree. Rule 10f provides in pertinent part:

> After reasonable notice, the director may apply 1 of the following procedures in a hearing district:
> (a) The testimony of all expert witnesses, including medical experts, to be offered at trial shall be by deposition by the parties seeking to offer such witnesses' testimony in advance of the trial date in accordance with the following:
> (i) Plaintiff shall schedule and take such depositions not less than 20 days before the trial date.

* Circuit judge, sitting on the Court of Appeals by assignment.

The doctrine of substantial compliance does not apply to Rule 10f, because the rule is mandatory in nature. *Wojciechowski v General Motors Corp*, 151 Mich App 399, 404; 390 NW2d 727 (1986).[1] The plaintiff must strictly comply with the requirement that he schedule and take depositions of expert witnesses not less than twenty days before the trial date. *Id.*

We reject plaintiff's initial contention that Rule 10f was "nonexistent" at the time of trial and that no rules currently govern practice before the Board of Magistrates. Plaintiff argues that the emergency rules promulgated by the Department of Labor and approved by the Governor in 1987 expired in 1988, leaving no administrative rules applicable to proceedings before the magistrate. The emergency rules, however, related to the waiver of public notice, hearing, and review requirements for administrative rules to allow the Board of Magistrates to properly hear and decide petitions. The emergency rules did not repeal or render ineffective Rule 10f, which took effect on January 3, 1979. Accordingly, Rule 10f governed the proceedings before the magistrate in this case.

In this case, plaintiff complied with Rule 10f by scheduling and taking Dr. Sanford's deposition more than twenty days before the trial date, June 5, 1991. That the magistrate originally scheduled trial for April

---

[1] Our Supreme Court, in lieu of granting leave to appeal, remanded *Wojciechowski* to this Court for reconsideration in light of *White v General Motors Corp*, 431 Mich 387; 429 NW2d 576 (1988). The Court denied leave to appeal and cross appeal in all other respects. 431 Mich 908. On remand, this Court vacated its prior decision regarding the application of MCL 418.373; MSA 17.237(373). This Court affirmed its prior opinion in all other respects. *Wojciechowski v General Motors Corp (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued May 17, 1989 (Docket No. 114549).

8, 1991, is of no consequence. The "trial date" is the date upon which trial begins. Therefore, the WCAC erred in determining that the magistrate abused his discretion because he properly admitted the deposition under Rule 10f. The WCAC's error, however, does not necessitate reversal because the WCAC determined that, even considering Dr. Sanford's testimony, no competent, material, and substantial evidence supported the magistrate's decision.

II

Plaintiff next argues that the WCAC exceeded the scope of its administrative appellate review in reversing the magistrate's decision. We disagree. This Court's role in reviewing WCAC decisions is to determine "whether the WCAC acted in a manner consistent with the concept of administrative appellate review that is less than de novo review in finding that the magistrate's decision was or was not supported by competent, material, and substantial evidence on the whole record." *Holden v Ford Motor Co*, 439 Mich 257, 267-268; 484 NW2d 227 (1992); accord *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507, 516; 563 NW2d 214 (1997). This Court should ordinarily defer to the WCAC's judgment "unless it is manifest that it exceeded its reviewing power." *Holden, supra* at 269.

> "If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not 'misapprehend or grossly misapply' the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for

administrative appellate review by the seven-member WCAC of decisions of thirty magistrates, and bestowed on the WCAC final fact-finding responsibility subject to constitutionally limited judicial review." [*Goff, supra* at 516-517 (quoting *Holden, supra* at 269).]

This Court's review, however, begins with the magistrate's decision. *Id.* at 513.

We agree with the WCAC that the magistrate's decision is not supported by competent, material, and substantial evidence. Plaintiff first injured his back in 1977, while working as a welder. Plaintiff maintained that surgery relieved his back pain and that he had fully recovered before he began working for defendant employer in May 1985. Plaintiff claimed that he injured his back again on September 30, 1985, while delivering a vending machine in the course of his employment. He testified that he felt a sharp pain in his back while pushing a machine that had slipped on a dolly. Plaintiff left work and visited a chiropractor the next day. Plaintiff returned to work a few days later for an interview with his employer. Plaintiff has not worked since the date of his injury. He collected worker's compensation and now receives social security. Plaintiff testified that he suffers chronic back pain, which is temporarily relieved by chiropractic treatment.

The central issue in this case is whether plaintiff's back pain is caused by his work-related injury or a degenerative condition related to age. Resolution of this issue turns on the testimony of the medical experts. Defendants' experts, Drs. John Barbarotto and Glafkos Theodoulou, found no objective evidence of any injury caused by the 1985 incident. They opined that plaintiff had a degenerative disc condi-

tion. Dr. Barbarotto, a physician and chiropractor, examined plaintiff at defendants' request in 1988. The magistrate summarized Dr. Barbarotto's findings:

> He said x-rays showed marked degenerative disc disease throughout the thoracic and lumbar spine and he noted the 6th lumbar vertebra, a congenital abnormality. He felt the plaintiff could perform work not requiring heavy lifting or bending and that the changes could be the result of the aging process rather than an injury. He said objective findings could be explained by the congenital abnormality. Dr. Barbarotto did not feel further chiropractic care was called for.

Dr. Barbarotto testified that his examination revealed objective evidence of a chronic injury, not an "acute insult."

Dr. Theodoulou, an orthopedic surgeon, examined plaintiff in 1990. The magistrate summarized Dr. Theodoulou's testimony:

> Dr. Theodoulou . . . said x-rays showed mild scoliosis at the mid lumbar level with convexity to the left, degenerative changes with an osteophyte and sclerosis at L3-4, narrowing at L5-S1, and degenerative change throughout the spine. In his opinion the plaintiff has a chronic discongenic condition at at least L5-S1 and L3-4, with [sic] is longstanding, probably stemming from earlier injury. He felt injuries suffered in 1985 were resolved and that plaintiff could return to light work not involving lifting in excess of 20 pounds, or bending, standing or walking. Dr. Theodoulou did not feel continued chiropractic care was called for.

Dr. Theodoulou opined that plaintiff's 1985 injury had long since healed.

Dr. John Schafer, plaintiff's chiropractor, likewise found a degenerative condition, but opined that plaintiff's symptoms could be the result of the work inci-

dent. Dr. Schafer began treating plaintiff three times a week in the spring of 1986. The magistrate summarized Dr. Schafer's diagnosis:

> Dr. Schafer was of the opinion that the plaintiff's back condition prevents him from engaging in lifting or continuous bending. His diagnosis is L3, T2 and C5 subluxations, myalgia, sciatica, low back pain/lumbago, unstable spine, degenerative disc disease, scrum subluxation and short leg.

Dr. Schafer testified that plaintiff's injury impairs lifting activities and bending motions.

Dr. Schafer, however, admittedly altered his records to reflect that plaintiff told him about the 1985 accident at his initial examination. Plaintiff did not reveal the work injury in a written history prepared for Dr. Schafer in early 1986. He stated that his back pain did not result from an accident, but rather began spontaneously. He also indicated that he was a podiatrist, not a laborer. Plaintiff offered no explanation for his answers and the failure to disclose his work-related back injury in the written history. Further, plaintiff continued treatment with Dr. Schafer after defendant insurer notified him that it would not cover chiropractic care and generated a $13,394.42 debt for services rendered. Dr. Schafer altered his records after it became clear that defendant insurer would not cover treatment because it believed that the injury was not work-related.

The magistrate credited Dr. Schafer's testimony despite the evidence strongly suggesting fraud. The magistrate stated:

> Any doubts cast as to the occurrence of the September 30, 1985 injury and causal nexus between that injury and disability by the testimony of Drs. Theodoulou and

Barbarotto, and the initial history received by Dr. Schafer are more than set to rest by the contemporaneous history received by Dr. Sanford.

The magistrate apparently reasoned that because plaintiff told Dr. Sanford that his injury occurred at work, a causal nexus between the injury and disability existed and plaintiff's subsequent statements to the contrary are of no consequence. Dr. Sanford, an orthopedic surgeon, was the first physician who treated plaintiff. She examined plaintiff less than three weeks after he purportedly injured his back at work and treated him with medication and physical therapy until late 1985 or early 1986. The magistrate summarized part of Dr. Sanford's testimony:

Dr. Sanford testified that she first saw the plaintiff on October 17, 1985. A myelogram performed shortly thereafter showed a probably herniated disc at L4-5, which would usually be L3-4, but plaintiff has a 6th lumbar vertebra. Dr. Sanford did not believe plaintiff could return to his former duties. During cross-examination, Dr. Sanford said plaintiff did give her a history of being able to work after a previous injury in 1977, and that he gave her a consistent history of hurting himself while struggling with a vending machine which was maintained during her period of treatment. She felt the problem pre-dated her first treatment and said sneezing or coughing would be more apt to aggravate an existing injury than cause one. Dr. Sanford said chiropractic treatment would at best provide temporary symptomatic relief, but would be of no long-term benefit.

The magistrate's reliance on Dr. Sanford's testimony is unsound, and his finding of causation is not supported by competent evidence. Although Dr. Sanford found a "probable" herniated disc in 1985, she had not treated plaintiff during the five years that preceded trial. Dr. Sanford merely opined that, assuming

that plaintiff's symptoms had not changed since she last saw him, plaintiff could not return to his job. Consequently, the only witness who examined plaintiff after 1985 and found an injury stemming from the workplace was Dr. Schafer. The magistrate, however, did not assess plaintiff's and Dr. Schafer's credibility and did not address the central issue in this case—whether work or age caused plaintiff's injury. Therefore, the magistrate's decision was not supported by competent, material, and substantial evidence. Accordingly, the WCAC was free to make its own findings. *Goff, supra* at 538.

The WCAC was cognizant of the deference to be given to the magistrate's decision and did not misapprehend or grossly misapply the substantial evidence standard. The WCAC did not reverse the decision of the magistrate solely on the basis of a different determination of witness credibility. Instead, the WCAC reviewed the whole record and, in doing so, appropriately focused on the discrepancies in plaintiff's account of the cause of his injury. The WCAC also emphasized that Dr. Schafer altered his records not only to reflect the 1985 work injury, but to establish a causal nexus between that injury and plaintiff's back pain in 1986. The WCAC stated:

> Dr. Schafer gave plaintiff chiropractic treatment for four years beginning in 1986. He admitted in his January 31, 1991 deposition that he altered his office records "within the last year" to describe a previously unrevealed 1985 work injury.
>
> Examination of Dr. Schafer's record revealed the following. In Defendants' Deposition Exhibit 1, dated May 14, 1986, entitled "Patient Introduction Card", plaintiff wrote that he was self employed as a podiatrist, that he had low back pain which began spontaneously and that there was no fall, accident or injury involved.

In Defendants' Deposition Exhibit 3, Dr. Schafer wrote that plaintiff's complaint of low back pain had begun with a sneeze that morning. Eight years prior, plaintiff had a laminectomy. Three years prior, plaintiff suffered a concussion when his head hit a windshield in a motor vehicle accident.

In Defendants' Deposition Exhibit 2, Dr. Schafer admitted to the following additions to the record: he wrote that plaintiff's low back pain had "increased" as a result of the sneeze and that the laminectomy had been "good for 7 years until 9-30-85 twisted back and LBP pushing frig."

At trial, plaintiff admitted that he filled out Exhibit 1 and that he was not then self employed as a podiatrist. He had not worked as such for 20 years, since approximately 1964. He admitted he wrote that the pain began spontaneously and that he was not involved in any fall, accident or injury. Although plaintiff believed that when he spoke to Schafer shortly after filling out this card he told him of the work related incident with the vending machine, he had no explanation for the glaring inconsistencies in his renditions of the facts. Therefore neither the testimony of plaintiff or of Dr. Schafer is reliable.

In focusing on the evidence not considered by the magistrate, the WCAC gave an adequate reason grounded in the record for reversing the magistrate's decision. Therefore, we affirm the WCAC's decision because it acted in a manner consistent with the concept of administrative appellate review that is less than de novo. *Holden, supra* at 267-268.

Affirmed.

M. WARSHAWSKY, J., concurred.

JANSEN, J. (*concurring in part and dissenting in part*). I concur with part I of the majority's opinion that the Worker's Compensation Appellate Commission (WCAC) erred in determining that the magistrate abused his discretion in denying defendants' motion

to quash Dr. Brenda Sanford's deposition. As noted by the majority, plaintiff complied with 1979 AC, R 408.40f(a)(i) (Rule 10f) by scheduling and taking Dr. Sanford's deposition more than twenty days before the trial date of June 5, 1991. Therefore, the WCAC erred in striking Dr. Sanford's deposition.

However, I dissent from the majority's holding to affirm the decision of the WCAC. I find that the WCAC exceeded the scope of its administrative review in reversing the magistrate's decision. I would reverse the decision of the WCAC and reinstate the magistrate's decision to award benefits to plaintiff.

Plaintiff began his employment with defendant Tri-County Distributing, Inc., in May 1985 as a warehouse manager. Plaintiff's work responsibilities included lifting boxes of snack foods and candy bars weighing up to seventy-five to eighty pounds. Plaintiff also helped to deliver vending machines. On September 30, 1985, plaintiff was moving a vending machine, and, while pushing it, he suffered a back injury. Plaintiff went to a chiropractor the following day, and began treating with Brenda Sanford, M.D., an orthopedic surgeon, on October 17, 1985. In May 1986, plaintiff began treating with John Schafer, a chiropractor.

Tri-County voluntarily paid worker's compensation benefits to plaintiff from October 10, 1985, until 1990. Plaintiff filed a petition on January 17, 1990, indicating that there was a dispute concerning medical benefits in the amount of approximately $20,000. Tri-County then filed a notice of dispute on August 16, 1990, after the receipt of an independent medical examination.

The WCAC ruled, in part, in its decision:

For the sake of completeness, we note that even if Dr. Sanford's deposition had been admissible, we are not entirely convinced that plaintiff would have the appropriate support for his claim. The doctor's testimony is entirely dependent upon the truthfulness of plaintiff's version of events. As shown above, plaintiff is not credible. This severely weakens the impact and usefulness of the doctor's conclusions.

I believe that the WCAC did not act in a manner consistent with the concept of administrative appellate review that is less than review de novo in finding that the magistrate's decision was not supported by competent, material, and substantial evidence on the whole record. *Holden v Ford Motor Co*, 439 Mich 257, 267-268; 484 NW2d 227 (1992).

The WCAC is required to engage in a qualitative and quantitative analysis of the evidence in order to ensure a full, thorough, and fair review. MCL 418.861a(13); MSA 17.237(861a)(13). Findings of fact made by the magistrate shall be considered conclusive by the WCAC if supported by competent, material, and substantial evidence on the whole record. MCL 418.861a(13); MSA 17.237(861a)(13). The WCAC's review is *not* de novo, and it may not simply substitute its findings for that of the magistrate. *Kovach v Henry Ford Hosp*, 207 Mich App 107, 111; 523 NW2d 800 (1994). If the magistrate's conclusion is derived from competent, material, and substantial evidence, then the WCAC may not substitute its judgment for that of the magistrate notwithstanding either the reasonableness or the adequacy of the WCAC's conclusion. *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507, 514; 563 NW2d 214 (1997). On judicial appellate review, this Court decides whether the WCAC acted properly by considering whether there were issues of

credibility of live witnesses to be determined by the magistrate, the evidence considered and ignored by the magistrate and the WCAC, the care taken by the magistrate and the WCAC, and the reasoning and analysis of the magistrate and the WCAC. *Holden, supra,* p 268.

Where a party claims that the WCAC has exceeded its power by reversing the decision of the magistrate, meaningful review must begin with the magistrate's decision, because if competent, material, and substantial evidence on the whole record supports the magistrate's decision, the WCAC need go no further. If it does, the WCAC has exceeded its authority. *Goff, supra,* p 513.

The WCAC has simply substituted its findings for that of the magistrate in this case. The WCAC concluded that plaintiff was not credible "as shown by the sharp contrast between his trial testimony and the information given on the 'Patient Introduction Card' " to Dr. Schafer. The WCAC simply set aside the findings of the magistrate on the basis of its conclusion that plaintiff was not credible. However, the magistrate, who had the opportunity to observe plaintiff and his demeanor, was in a much better position to make a credibility finding. Further, the WCAC's decision to reverse the decision of the magistrate was based on its finding that plaintiff was not credible and that Dr. Schafer's testimony was, therefore, unreliable. This is not the type of administrative appellate review contemplated by our constitution,[1] MCL 418.861a(3);

---

[1] Const 1963, art 6, § 28  provides that findings of fact in a worker's compensation case *shall* be conclusive in the absence of fraud unless otherwise provided by law.

MSA 17.237(861a)(3),[2] or our Supreme Court's holdings in *Holden* and *Goff*. The WCAC did not engage in a qualitative and quantitative analysis of the whole record to ensure a full, thorough, and fair review. Rather, the WCAC simply set aside the findings of the magistrate and substituted its own findings under a credibility determination. This is not proper. *Kovach, supra*, p 111; *Illes v Jones Transfer Co (On Remand)*, 213 Mich App 44, 56; 539 NW2d 382 (1995).

Moreover, the magistrate's decision was supported by competent, material, and substantial evidence on the whole record because the magistrate clearly relied on the testimony of Dr. Sanford to support the finding of a causal nexus between the injury and the disability. It was appropriate for the magistrate to do so because Dr. Sanford was the first doctor to treat plaintiff immediately after his injury. Therefore, the WCAC's decision to reverse the decision of the magistrate, based in part on Dr. Schafer's testimony as being "unreliable," is nothing more than setting aside the finding of the magistrate and substituting its own findings. Our Supreme Court has made clear that the WCAC exceeds its reviewing power when it does so. *Goff, supra*, p 514.

Accordingly, I would hold that the WCAC exceeded its reviewing authority in this case and that it improperly substituted its judgment for that of the magistrate. I would reverse the decision of the WCAC and reinstate the decision of the magistrate.

---

[2] Under this statute, findings of fact made by the magistrate *shall* be considered conclusive by the WCAC if supported by competent, material, and substantial evidence on the whole record.