*248 KELLY, J.
(concurring in part and dissenting in part). I agree with the majority’s conclusion that defendant was entitled to summary disposition in this case. But my agreement stops there. The majority unnecessarily reaches the issue whether defendant must show actual prejudice in order to bar a claim filed more than 120 days after the date of the injury.
Plaintiff failed to supply defendant with the statutorily required notice specifying “the exact location and nature of the defect, the injuries sustained, and the names of the witnesses known at the time by the claimant.” MCL 691.1404(1). Therefore, defendant did not need to show actual prejudice arising from untimeliness of the notice. The lower courts erred in reaching the actual prejudice issue, as does the majority in this Court. The matter should be decided only on the basis of the deficiency of the contents of the notice. By stretching to entertain the timeliness-of-notice issue and, in doing so, by needlessly overturning two more precedents, the majority invites renewed accusations of judicial activism.
I. THE SPECIFIC NOTICE IN THIS CASE WAS INSUFFICIENT
MCL 691.1404(1) provides:
As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred, except as otherwise provided in subsection (3) shall serve a notice on the governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.
Plaintiff sent the following notice to defendant by certified mail:
*249 Re: My Client Date of Accident: Location: Joanne Rowland February 6, 2001 Intersection of Jennings and Main Street Northfield Township
My File No. 4803
Dear Sir/Madam:
Please be advised that I have been retained by Mr. [sic] Joanne Rowland to investigate and evaluate a claim for personal injuries that arose out of an incident that occurred on February 6, 2001. This incident occurred at the intersection of Jennings and Main Street in Northfield Township, County of Washtenaw, State of Michigan. Please be advised that I will continue my investigation and if the same is warranted, will pursue a claim for money damages against the responsible agency for jurisdiction [sic] of this roadway. If I do not hear from you within the near future, I will be forced to place this matter into litigation.
To support the notice required by MCL 691.1404(1), plaintiff relies also on a Freedom of Information Act (FOIA)[1] request made by vides: plaintiffs attorney. It pro-
Re: My Client Date of Accident: Location: Joanne Rowland February 6, 2001 Intersection of Jennings and Main Street Northfield Township
My File No. 4803
Dear Sir/Madam:
Please be advised that I represent Joanne Rowland who was injured at the above location. Please produce or make available for viewing and copying, any photo logs or video logs maintained by the Washtenaw County Road Commission showing the intersection of Jennings and Main Street.
*250 Please be advised that this letter is being sent to you pursuant to the Freedom of Information Act.
To be sufficient under MCL 691.1404(1), notice must include four components: (1) the exact location of the defect; (2) the exact nature of the defect; (3) the injury sustained; and (4) any witnesses known at the time of the notice. The above quoted letters do not satisfy all four requirements. Glaringly absent is the second requirement. Nowhere in the material provided to defendant did plaintiff indicate the nature of the defect.
Reference to the defect appears in her complaint, where plaintiff claims that she was injured when she tripped and fell on “broken, uneven, dilapidated, depressed and/or potholed areas”[2] in the roadway and crosswalk. But no such information is included in either the notice or the FOIA request. In fact, the notice does not even hint at the conditions alleged in the lawsuit. Nothing found there gives rise to an inference that plaintiff encountered a pothole, and nothing indicates that plaintiffs injuries were caused by broken pavement.
MCL 691.1404(1) specifies that the notice contain an “exact” statement of the defect. Because plaintiffs notice contains no reference at all to the defect, it certainly does not rise to the level of an exact statement. MCL 691.1404(1) utilizes the mandatory word “shall” in setting forth the four required components of notice.[3] Plaintiffs failure to meet one of the four statutory requirements cannot be excused. Consequently, her claim must be dismissed. I would reverse the Court of Appeals decision and remand the case to the trial court for entry of summary disposition in favor of defendant.
*251 II. IT IS UNNCESSARY TO REACH HOBBS[4] AND BROWN[5]
The Michigan Supreme Court in Hobbs found that the only purpose of the statutory notice provision is to avoid actual prejudice arising from a lack of notice within 120 days. Hobbs v Dep’t of State Hwys, 398 Mich 90, 96; 247 NW2d 754 (1976). Hobbs concluded, “[Absent a showing of such prejudice the notice provision contained in MCLA 691.1404; MSA 3.996(104) is not a bar to claims filed pursuant to MCLA 691.1402; MSA 3.996(102).” Id. In Brown, the Court specifically addressed whether Hobbs should be overturned. Brown v Manistee Co Rd Comm, 452 Mich 354, 356; 550 NW2d 215 (1996). After due consideration, we retained Hobbs’s interpretation of the 120-day requirement:
We are not convinced that Hobbs was wrongly decided. Further, we believe that more injury would result from overruling it than from following it. The rule in Hobbs has been an integral part of this state’s governmental tort liability scheme for almost two decades. It should not be lightly discarded. Although the law of governmental tort liability in this state has changed over the years, the continued validity of the Hobbs rule will not result in injustice. Rather, a reaffirmance of the rule will maintain the uniformity, certainty, and stability in the law of this state.
Further, we emphasize that the Legislature has not changed the language of § 4 since Hobbs was decided. [Id. at 366-367.]
In this case, the majority does not direct itself to the contents of the notice. Rather, it jumps directly to the fact that plaintiff provided the notice more than 120 days after the date of injury. However, given that the notice was deficient, the date that plaintiff provided it is inconsequential. Even if plaintiff had given notice *252 within 120 days, under MCL 691.1404(1) defendant would have been entitled to summary disposition.
It is an exception to the rule of governmental immunity that a government agency can be liable in tort for its failure to properly maintain a highway under its jurisdiction. In order to safeguard an agency that might fall within this exception, the Legislature created the precondition of notice in MCL 691.1404(1). Brown, 452 Mich at 359. The information in the notice assists the agency in determining what evidence it needs to evaluate the claim. Id. at 362. The 120-day requirement ensures that the agency has an opportunity to investigate while the evidence it needs is still available. This is why both Brown and Hobbs concluded that actual prejudice to the agency because of a lack of timely notice is the only legitimate purpose of the notice provision. Id. at 366; Hobbs, 398 Mich at 96. Conversely, if the agency can gather the needed evidence and evaluate the claim even though notice is late, the agency is not prejudiced, and the purpose of MCL 691.1404(1) is effectuated.
Therefore, when a court reviews a notice, it must first examine its contents. If the contents do not provide the agency with the information necessary for an investigation and evaluation of the claim, the notice is insufficient. This would be true even if the notice were given on the first day after the claimed damage occurred. In this case, the lower courts failed to consider this point and proceeded directly to the final step of the inquiry. There was no need or justification for doing so, given the fatal flaws in the contents of the notice. The lower courts erred in even considering the timeliness issue.
The majority here makes the same error. It does not conduct an individualized review of the contents of the *253 notice. Rather, it focuses on the timeliness issue, reconsiders Brown and Hobbs, and overturns them.[6]
In order to set these decisions aside, the majority must discuss the constitutional implications of MCL 691.1404. It is a well-accepted rule that an appellate court should not reach a constitutional issue if a case can be decided on other grounds. J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1, 468 Mich 722, 734; 664 NW2d 728 (2003); Booth Newspapers, Inc v Univ of Michigan Bd of Regents, 444 Mich 211, 234; 507 NW2d 422 (1993). There would be no need to reach the constitutional question if the majority properly focused on plaintiffs failure to provide adequate notice.
The result it reaches exhibits disrespect for stare decisis. While we can all agree that the doctrine of stare decisis is not an inexorable command, we also all know that it is the backbone of American justice. It “promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Payne v Tennessee, 501 US 808, 827; 111 S Ct 2597; 115 L Ed 2d 720 (1991).[7]
The United States Supreme Court has observed that “ ‘[t]he doctrine carries such persuasive force that we *254 have always required a departure from precedent to be supported by some “special justification.” ’ ” United States v IBM, 517 US 843, 856; 116 S Ct 1793; 135 L Ed 2d 124 (1996), quoting Payne, 501 US 842 (Souter, J., concurring), quoting Arizona v Rumsey, 467 US 203, 212; 104 S Ct 2305; 81 L Ed 2d 164 (1984). Former United States Attorney General Jeremiah S. Black eloquently stated the justification for adherence to precedent when he sat on the Supreme Court of Pennsylvania:
It is sometimes said that this adherence to precedent is slavish; that it fetters the mind of the judge, and compels him to decide without reference to principle. But let it be remembered that stare decisis is itself a principle of great magnitude and importance. It is absolutely necessary to the formation and permanence of any system of jurisprudence. Without it we may fairly be said to have no law; for law is a fixed and established rule, not depending in the slightest degree on the caprice of those who may happen to administer it. I take it that the adjudications of this Court, when they are free from absurdity, not mischievous in practice, and consistent with one another, are the law of the land. It is this law which we are bound to execute, and not any “higher law,” manufactured for each special occasion out of our own private feelings and opinions. If it be wrong, the government has a department whose duty it is to amend it, and the responsibility is not in any wise thrown upon the judiciary. The inferior tribunals follow our decisions, and the people conform to them because they take it for granted that what we have said once we will say again. There being no superior power to define the law for us as we define it for others, we ought to be a law unto ourselves. If we are not, we are without a standard altogether. The uncertainty of the law — an uncertainty inseparable from the nature of the science — is a great evil at best, and we would aggravate it terribly if we could be blown about by every wind of doctrine, holding for true to-day what we *255 repudiate as false to-morrow. [McDowell v Oyer, 21 Pa 417, 423 (1853) (emphasis in original).][8]
No special justification exists in this case to attack the precedent created by Brown and Hobbs. Rather, the case can be decided on other grounds without upsetting established law or rejecting precedent. When courts stretch to overturn precedent, they destroy the very certainty and stability that stare decisis is designed to protect. Such actions bring disrespect to our Court.
*256 The majority’s decision to reject stare decisis in this case conflicts with even its own statement about when such action is appropriate. The majority has indicated that the reasoning of stare decisis should be reexamined only where a holding is “ ‘ “fairly called into question.” ’ ” Sington v Chrysler Corp, 467 Mich 144, 161; 648 NW2d 624 (2002), quoting Robinson v Detroit, 462 Mich 439, 463; 613 NW2d 307 (2000), quoting Mitchell v W T Grant Co, 416 US 600, 627-628; 94 S Ct 1895; 40 L Ed 2d 406 (1974) (Powell, J., concurring). When the Court need not reach an issue in order to make its decision in a case, then that issue has not been fairly called into question.
This Court addressed Brown a mere ten years ago. What has changed in that decade to warrant a complete reversal in this law? There is but one answer, the makeup of the Court. The law has not changed. Only the individuals wearing the robes have changed.[9] It is amazing how often the members of this majority have declared themselves more capable of understanding the law and reaching the “right” result than any justice who sat before.[10] “It is this law which we are bound to execute, and not any ‘higher law,’ manufactured for each- *257 special occasion out of our own private feelings and opinions.” McDowell, 21 Pa at 423. The majority has ordained itself master of such “higher law.” [11] In doing so, it undermines the stability of Michigan’s courts and damages the integrity of the judicial process. Payne, 501 US at 827.[12] I must strenuously dissent from such activity.[13]
*258 in. EVEN IF THEY SHOULD BE REACHED, HOBBS AND BROWN SHOULD NOT BE OVERTURNED
Even if it were proper to reach the 120-day notice requirement in this case, it would not be appropriate to overturn Hobbs and Brown. Together, these cases represent 30 years of precedent on the proper meaning and application of MCL 691.1404. Such a considerable history cannot be lightly ignored. And the Legislature’s failure to amend the statute during this time strongly indicates that Hobbs and Brown properly effectuated its intent when enacting MCL 691.1404(1).
*259 The primary goal of statutory interpretation is to give effect to legislative intent. In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999). In both Hobbs and Brown, the Court identified the intent behind the notice provision as being to prevent prejudice to a governmental agency. “[A]ctual prejudice to the state due to lack of notice within 120 days is the only legitimate purpose we can posit for this notice provision____” Hobbs, 398 Mich at 96. For 20 years, the Legislature knew of this interpretation[14] but took no action to amend the statute or to state some other purpose behind MCL 691.1404(1). The Court then readdressed the statute in Brown and came to the same conclusion regarding the purpose behind MCL 691.1404(1).
Another ten years have passed, but still the Legislature has taken no action to alter the Court’s interpretation of the intent behind the statute. This lack of legislative correction points tellingly to the conclusion that this Court properly determined and effectuated the intent behind MCL 691.1404(1). If the proper intent is effectuated, the primary goal of statutory interpretation is achieved. In re MCI, 460 Mich at 411.[15]
*260 The majority heavily criticizes Brown for its use of legislative acquiescence as a tool of statutory construction. But these criticisms are not well founded, either logically or legally. The United States Supreme Court recently reaffirmed the use of legislative acquiescence:
[T]he claim to adhere to case law is generally powerful once a decision has settled statutory meaning, see Patterson v McLean Credit Union, 491 U.S. 164, 172-173, 109 S. Ct. 2363, 105 L Ed 2d 132 (1989) (“Considerations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done”). In this instance, time has enhanced even the usual precedential force!.] [Shepard v United States, 544 US 13, 23; 125 S Ct 1254; 161 L Ed 2d 205 (2005).]
This tool of construction has a long history in the law. In 1880, the United States Supreme Court wrote:
After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment. [Douglass v Pike Co, 101 US (11 Otto) 677, 687; 25 L Ed 968 (1880).]
There also exists a consistent and long history of the use of this tool in Michigan. See Brown, 452 Mich at 367-368; Gordon Sel-Way, Inc v Spence Bros, Inc, 438 Mich 488, 505; 475 NW2d 704 (1991); Craig v Larson, 432 Mich 346, 353; 439 NW2d 899 (1989); Wikman v City of Novi, 413 *261 Mich 617, 638; 322 NW2d 103 (1982); Smith v Detroit, 388 Mich 637, 650; 202 NW2d 300 (1972); Magreta v Ambassador Steel Co, 380 Mich 513, 519-520; 158 NW2d 473 (1968); In re Clayton Estate, 343 Mich 101, 106-107; 72 NW2d 1 (1955); and Twork v Munsing Paper Co, 275 Mich 174, 178; 266 NW 311 (1936).
The concept of legislative acquiescence is reasonable and logical. The Legislature is presumed to know the law, including the decisions of this Court. Ford Motor Co, 475 Mich at 439-440. Acquiescence in failing to amend a statute is a proper manner by which the Legislature accepts a court’s interpretation of that statute.
Our goal in interpreting statutes is to give effect to the purpose behind them. We should not limit ourselves in the use of any tool that gets us to that goal. “If the purpose of construction is the ascertainment of meaning, nothing that is logically relevant should be excluded.” Frankfurter, Some reflections on the reading of statutes, 47 Colum L R 527, 541 (1947), quoted in Shapiro, The Oxford Dictionary of American Legal Quotations (New York: Oxford University Press, 1993), p 390. Legislative acquiescence is one useful tool in ascertaining the intent of a statute.[16] Adequate reasons do not exist to discard it.[17]
*262 The majority argues that Brown’s reliance on legislative acquiescence was inappropriate because Hobbs’s discussion of the 120-day notice requirement was based, in part, on the requirement’s constitutionality. It claims that the Legislature was left incapable of revising the statute even if it desired to do so. This is not accurate. The Legislature was free to amend MCL 691.1404(1).
Hobbs’s analysis centered on the fact that the Court could identify only one possible reason for the notice requirement: preventing prejudice to a government agency. Hobbs, 398 Mich at 96. If the Legislature had another intent in mind, it had only to write it into the statute.[18] A revised statute would create an entirely new question for the Court. If the Legislature made a revision, the constitutionality of the revision would be an open question. It would not be controlled by Hobbs. Hobbs merely dealt with a notice provision that had one known intent, fair notice to prevent actual prejudice.
*263 Moreover, if the Legislature truly desired a hard and fast 120-day limit, it could have rewritten the statute to contain a presumption of prejudice.[19] Alternatively, it could have defined actual prejudice in the statute to be more restrictive than Hobbs found it to be. There was the possibility of change. Because it did not occur, it is reasonable to deduce that the Legislature’s inaction has been intentional.
This is especially true in light of Brown, which specifically provided the Legislature with a road map showing how it could change the law to effectuate some other intent.
The difficulty we experienced in Hobbs was that we could not posit another purpose for the notice provision other than to prevent prejudice to the state. If the Legislature was not happy with our presumption, it could have responded in some fashion to the Hobbs decision. It could have further articulated the notice provision’s purpose and possibly have created a presumption of prejudice to the governmental agency from the plaintiffs’ failure to give notice within 120 days. However, not only has the Legislature not attempted to revise the statute to respond to Hobbs, it also has not even criticized Hobbs in later legislative enactments or amendments in the almost twenty years since it was decided. [Brown, 452 Mich at 367 n 18.]
If the Legislature disagreed with Hobbs but was unsure how to act, Brown not only provided the impetus for change but the means to reach that goal. Despite what can fairly be characterized as the Court’s guide for *264 possible legislative amendments, the Legislature still has not repudiated Brown and Hobbs.[20] Given that ten years have passed since Brown, this inaction is particularly meaningful. It evidences that Brown and Hobbs accurately divined the intent of the Legislature.
IV THE ROBINSON[21] FACTORS
This Court laid out the factors to consider in overturning stare decisis in Robinson. The first consideration is whether the earlier decision was wrongly decided. Id. at 464. As discussed above, the Legislature has acquiesced in Hobbs’s and Brown’s interpretation of MCL 691.1404(1). This certainly suggests that the Court’s interpretation properly identified the intent of the Legislature as being to prevent prejudice to a government agency. The central goal of statutory construction is to effectuate the Legislature’s intent. In re MCI, 460 Mich at 411. It appears that Hobbs and Brown were correctly decided.
The other Robinson factors are: (1) whether the decision at issue defies “practical workability”; (2) whether reliance interests would work an undue hardship if the authority is overturned; and (3) whether *265 changes in the law or facts make the decision no longer justified. Robinson, 462 Mich at 464.
Hobbs and Brown do not defy practical workability. Rather, they have been an integral part of the law on governmental immunity for 30 years. The bench and bar have had no difficulty applying the actual prejudice requirement to the cases before them. Actual prejudice is not a complicated concept to apply. As such, there is no practical workability problem.
Brown addressed the reliance interests a decade ago. It noted:
[W]e believe that more injury would result from overruling it than from following it. The rule in Hobbs has been an integral part of this state’s governmental tort liability scheme for almost two decades. It should not be lightly discarded. [Brown, 452 Mich at 366.]
Now, another decade has passed. And the rule in Hobbs has become even more entwined with the law of governmental liability. Many plaintiffs likely shaped the processing of their cases in reliance on this law. For instance, a plaintiff could take more than 120 days to carefully assess his or her case and assure that the notice provided contains everything required by MCL 691.1404. Attorneys surely have relied on Hobbs and Brown to decide what cases to accept. This necessarily entails adjusting the attorney’s resources to properly handle the cases.
The majority claims that no one would properly rely on Hobbs or Brown because they are “text ignoring.” As I discussed in detail earlier, this is not true. Hobbs and Brown properly effectuated the intent of the Legislature. But also implicit in this discussion is the majority’s contention that attorneys should not rely on precedent predating the present Court. At its core, this statement suggests that one should not rely on any *266 thing predating the current majority. The disrespect it pays to past justices of the Michigan Supreme Court is unfortunate. Rather than justifying overturning Hobbs and Brown, it demonstrates that the majority fails to respect the rule of stare decisis as applied to cases that predate this majority.
The final consideration under Robinson is whether changes in the law or facts make the decision no longer justified. Robinson, 462 Mich at 464. There have been no changes in the law or facts in question. Although the Hobbs ruling is 30 years old and the Brown ruling provides a road map for the Legislature to overturn Hobbs, the Legislature took no action. This favors retention of the precedents.
Considering all the Robinson factors, Hobbs and Brown should not be overturned. Rather, they should be retained, thereby respecting stare decisis, a doctrine that carries such persuasive force that courts have traditionally required a departure from it to be supported by special justification. IBM, 517 US at 856. After consideration and application of the Robinson factors, it is apparent that no special justification exists to overturn Hobbs and Brown, and the majority’s decision to do so is erroneous.[22]
V RETROACTIVITY
Generally, judicial decisions are given full retroactive effect. Pohutski v City of Allen Park, 465 Mich 675, 696; 641 NW2d 219 (2002). But there are well-established exceptions to this rule. The courts should consider the equities involved and, if injustice would result from full *267 retroactivity, should adopt a more flexible approach. Lindsey v Harper Hosp, 455 Mich 56, 68; 564 NW2d 861 (1997). Court decisions should have the goal of reaching justice. Tebo v Havlik, 418 Mich 350, 360; 343 NW2d 181 (1984), quoting Williams v Detroit, 364 Mich 231, 265; 111 NW2d 1 (1961) (opinion by EDWARDS, J., for reversal). Prospective application is appropriate where the holding overrules settled precedent. Lindsey, 455 Mich at 68.
This Court adopted from Linkletter v Walker, 381 US 618; 85 S Ct 1731, 14 L Ed 2d 601 (1965), three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. In the civil context, a plurality of this Court noted that Chevron Oil [Co] v Huson, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. [Pohutski, 465 Mich at 696 (citation omitted).]
When the threshold question is applied, it becomes apparent that this case states a new rule of law. When a court overturns precedent interpreting a statute, the decision is equivalent to, and is treated as, a new rule of law. Id. at 696-697. Because this case overturns decades of precedent, it is a newly created rule of law that warrants prospective application.
The majority characterizes its decision as a return to the correct interpretation of the statute and, as such, not a new rule. This argument does not ring true. Hobbs was decided 30 years ago. And, as the majority concedes, Hobbs was built, in part, on Reich v State Hwy Dep’t, 386 Mich 617; 194 NW2d 700 (1972). Therefore, the majority is treating almost 35 years of precedent as if it never existed. But decades of reliance on this line of *268 cases have elapsed, and these cases have shaped modern governmental immunity law. Because of it, prospective application is appropriate. Pohutski, 465 Mich at 696-697; Lindsey, 455 Mich at 68.
The majority also characterizes Hobbs as a rogue decision, a departure from the proper interpretation of the law. As I have discussed, the Legislature chose not to amend MCL 691.1404 despite ample opportunity to do so. This indicates that Hobbs effectuated legislative intent. But, beyond this, Hobbs is not a rogue decision. Supporting this is the fact that the Court took a second look at Hobbs in Brown. Decades apart, two incarnations of this Court looked at the same question and reached the same conclusion. Hobbs cannot fairly be characterized as some anomaly in the law.
The 30 years of precedent offered by Hobbs and the affirmance of Hobbs in Brown demonstrate that the majority is overturning a well-established rule of law. As such, this case creates new law. Pohutski, 465 Mich at 696-697. And prospective application is appropriate. Id.-, Lindsey, 455 Mich at 68.
Given that the threshold has been met, we must address the underlying factors. Turning to the first Pohutski factor, the Court must decide the purpose served by the new rule. The majority’s goal is to correct a statutory interpretation that it believes to be incorrect. Prospective application furthers such a purpose. Pohutski, 465 Mich at 697.
The second factor is the extent of reliance on the rule. Pohutski, 465 Mich at 696. Given that the rule has been in existence and applied for over 30 years, reliance is significant. Hobbs has shaped how attorneys handle cases. Under Hobbs, attorneys understand that they have increased time to investigate and perfect their *269 knowledge of a case before taking legal action. This is important given the detail needed to comply with MCL 691.1404(1).
The majority contends that people have not relied on Hobbs given the recent decisions of this Court. But I question that contention. As Justice JEREMIAH S. BLACK noted over 150 years ago:
The inferior tribunals follow our decisions, and the people conform to them because they take it for granted that what we have said once we will say again. There being no superior power to define the law for us as we define it for others[.] [McDowell, 21 Pa at 423.]
To hold otherwise is to disregard the importance of this Court. “ We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights.’ ” Chevron Oil Co, 404 US at 107, quoting Griffin v Illinois, 351 US 12, 26; 76 S Ct 585; 100 L Ed 891 (1956) (Frankfurter, J., concurring). The majority engages in such a legal fiction in this case. It is inappropriate.
The third factor is the effect of retroactivity on the administration of justice. Pohutski, 465 Mich at 696. In Pohutski, the Court determined that the third factor weighed in favor of prospective application. The reason for this is that retroactivity would create a distinct class of litigants being denied relief because of an unfortunate circumstance of timing. Id. at 698-699. In the instant case, the majority’s decision to overturn Hobbs and Brown will not have such a devastating effect on a distinct group of litigants. But the effect will be considerable. There will be a significant number of plaintiffs who will lose their remedy due to their failure to anticipate this change in the reading of MCL 691.1404(1). And it will cause attorneys to reevaluate *270 and amend their handling of governmental immunity cases. Because of this significant impact, I believe this factor favors prospective application.
The overturning of Hobbs and Brown is a more significant change in the law than the majority wishes to admit. Application of the Pohutski factors indicates as much. Consideration of these factors supports only prospective application of this decision.
VI. CONCLUSION
The majority unnecessarily reaches the issue whether defendant must show actual prejudice to bar a claim filed more than 120 days from the date the injury occurred. Plaintiff failed to supply sufficient notice to defendant. She did not provide an “exact” description of the nature of the defect. Because of that, defendant did not need to show actual prejudice. It was entitled to summary disposition no matter when the notice was given. The lower courts erred in considering the issue of actual prejudice, as does the majority of this Court.
In reaching to overturn Hobbs and Brown, the majority fails to pay proper respect to the doctrine of stare decisis and to the precedent of this Court. This continues a disturbing trend that the current majority has initiated and fostered. Hobbs and Brown properly effectuated the intent of the Legislature. As such, they should be retained.

 MCL 15.231 et seq.

 Plaintiffs Complaint and Demand for Trial by Jury, ¶ 8.

 Use of the word “shall” sets forth a mandatory directive, whereas use of the term “may” is permissive. See Oakland Co v Michigan, 456 Mich 144, 154 n 10; 566 NW2d 616 (1997) (opinion hy Kelly, J.).

 Hobbs v Dep’t of State Hwys, 398 Mich 90; 247 NW2d 754 (1976).

 Brown v Manistee Co Rd Comm, 452 Mich 354; 550 NW2d 215 (1996).

 Regrettably, this action is consistent with the alarming and unprecedented rate at which this majority overturns precedent. See Todd C. Berg, Esq., Overruling Precedent and the MSC, Michigan Lawyers Weekly <http://www.michiganlawyersweekly.com/subscriber/archives. cfm?page=MI/06/B060691.htm&recID=389963> (accessed November 10, 2006).

 The majority disagrees with my assessment of which issue should be reached first in this case. The respect for stare decisis and the avoidance of unnecessary constitutional issues provide ample reasons to deal with the simple issue of the sufficiency of the notice first. The majority offers no explanation why the first question must be the continued validity of Hobbs and Broum.

 Justice Maekman challenges me to develop my “own standards” concerning when I would overturn precedent. But I have no need to create my own standards when well-reasoned standards have been established in the laws of this country for over 150 years. As noted in McDowell, when precedents are “free from absurdity not mischievous in practice, and consistent with one another,” they should be retained. McDowell, 21 Pa at 423.1 would not lightly adopt new rules to guide my judicial philosophy when traditional tools used by courts throughout their history continue to serve well. In this line, I willingly apply interpretive aids such as the absurd results rule and the legislative acquiescence doctrine to guide my decisions. I regret that the justices constituting the current majority on this Court have abandoned these tools.
The majority states that I fail to respond to Justice Markman’s challenge to develop my own standard for overturning cases. In questioning what standard I would prefer, the majority shifts the discussion’s focus from where it belongs: on its own lack of respect for the rule of stare decisis.
The majority apparently misses the point of my reference to interpretive aids. Quite simply, it dismisses traditional tools and interpretative processes and shows disrespect for the judicial minds that came before it. It then overturns precedent at an -unparalleled rate. One discarded tool, legislative acquiescence, is especially relevant to this discussion. If one accepts the premise that the Legislature can and will change the law when it disagrees with a court’s interpretation, a court is not tempted to act in its place.
The majority claims that the standard I would apply to decide if stare decisis should be retained is “unworkable.” To justify this conclusion, it mischaracterizes and misquotes my dissenting opinion in Sington v Chrysler Corp, 467 Mich 144; 648 NW2d 624 (2002). In fact, the majority uses the same mischaracterization it made in the majority opinion in Sington. I will reiterate my point: when precedents are “free from absurdity, not mischievous in practice, and consistent with one another,” they should be retained. McDowell, 21 Pa at 423.

 Ironically, so little else has changed that the very same attorney who argued in Brown to overturn Hobbs returned to argue this case.

 This is a theme throughout Justice Markman’s concurring opinion. He seems to believe that it is the solemn duty of this majority to rewrite Michigan caselaw to “get the law ‘right.’ ” Ante at 228. This predisposition to find so much caselaw wrongly decided contributes to the majority’s seeming wholesale second-guessing of earlier decisions and renders the law increasingly arbitrary and unpredictable. Appropriate respect for stare decisis and for those who sat on this Court before us would greatly contribute to ending such instability.
I do not fault the majority for wanting to get the law “right.” I fault it for repeatedly deciding matters as if only it can reach a correct interpretation of the law. This case provides an example. Two prior incarnations of this Court reviewed the same issue and came to the same decision. The Legislature had decades to change the statute if it believed that Hobbs and Brown were incorrectly decided, yet it did nothing. But this majority still concludes that the Court’s interpretation of the law was *257 “wrong” this entire time. Surely it is not only the four justices currently making up the majority of this Court who are capable of correctly discerning what the Legislature meant.

 A quote from Justice Eugene Black seems apropos for this case:
At one time students and citizens, lay and professional, were taught that everyone is presumed to know the law, and hence is duty bound to act in accord therewith. But how may even skilled lawyers, and correspondingly skilled subordinate court judges, “know the law” when they are taught that the law in the hooks is not law at all, unless upon litigatory test a bare majority of this very ordinary Supreme Court happens to like it? Former Justice Voelker’s latest epigram comes to mind at this point. I quote it from “Laughing Whitefish”, p 239 (McGraw-Hill 1965):
“Clapping a black nightshirt on a lawyer and packing him off to the state capital and thenceforth calling him “Mister Justice” makes him no less fallible and uncertain than he was when he was hack home drawing five-dollar wills.” [Autio v Proksch Constr Co, 377 Mich 517, 542-543; 141 NW2d 81 (1966) (Black, J., dissenting).]

 Justice Markman implies that I would not have the same respect for stare decisis if majority control of the Court switched during my tenure. This amounts to little more than a circumstantial ad hominem logical fallacy, (see <http://en.wikipedia.org/wiki/Ad_honmiem> [accessed March 9, 2007]). Nothing in my decade-long tenure as a judge before the current majority was installed substantiates the conjecture that I would indulge in wholesale reversal of precedent if the opportunity arose. In the end, I am willing to put my “fealty” to stare decisis to the test. I encourage all who read this opinion to compare my record of adherence to precedent with the majority’s. For assistance in this, I refer the reader to Todd C. Berg, Esq., Overruling Precedent and the MSC, The Justices’ Scorecard, Michigan Lawyers Weekly,<http://www.michiganlawyersweekly.com/subscriber/archives_FTS. cfm?page=M3/06/B060691.htm&recID=389963&QueryText=overruling% 20and%20precedent%20and%20msc> (accessed December 22, 2006).

 The majority characterizes my discussion of their disrespect for stare decisis as a “canard.” Those familiar with this Court know that the *258 majority’s unprecedented attack on stare decisis is not a mere groundless rumor. The numbers do not he. The present majority has overturned more than three times as many precedents as did those who immediately preceded it (61 precedents overturned in five years by this majority compared to 18 by its predecessor). This is despite the fact that the earlier incarnation of the Court disposed of almost 3,000 more cases (13,923 total dispositions by this majority in five years as compared to 16,729 total dispositions by its predecessor). See Todd C. Berg, Esq., Overruling Precedent and the MSC, The “Pre-1999 Court” vs. The “Majority Court”, Michigan Lawyers Weekly, <http://www.michiganlawyersweekly.com/subscriber/archives_FTS.cfin? page=MI/06/B060691.htm&recID=389963&QueryText=overru]ing%20and %20precedent%20and%20msc> (accessed December 22,2006). This disparity is astounding. Also astounding is the majority’s repeated claim that nothing unusual is happening. If any “canard” exists in this case, it is the majority’s insistence that it is not overturning the precedent of this Court at an alarming rate.
The majority denies that it is overturning precedent willy-nilly. And it takes comfort in comparing the number of precedents the current majority has overturned to the total number of cases the Court has disposed of. These statistics should offer the majority no solace. In fact, they should be taken cum. grano salis. It is true that the majority overturned only one-third of one percent of total dispositions between 2000 and 2005. But this percentage rate is four times greater than the immediately preceding majority on the Court whose rate of overturning precedent compared to total dispositions was V22 of one percent. Berg, supra. Beyond this, reference to the overall dispositions is a red herring. The bulk of the Court’s dispositions are simple denial orders. This fact makes the total disposition percentage irrelevant. The majority should not receive credit for not overturning precedent when it simply denies leave to appeal. It would have to overturn nearly every precedent in the history of the Court to make this number appear significant in any way. The Todd Berg article makes a strong showing that the current majority on this Court is alarmingly activist.
*259 The majority makes the point that prior incarnations of this Court failed to make explicit when they were overturning precedent. Ironically, in support, the majority cites Mudel v Great Atlantic & Pacific Tea Co, 462 Mich 691; 614 NW2d 607 (2000). In Mudel, the majority claimed that Goff v Bil-Mar Foods, Inc (After Remand), 454 Mich 507; 563 NW2d 214 (1997), implicitly overturned Holden v Ford Motor Co, 439 Mich 257; 484 NW2d 227 (1992). As I pointed out in my concurrence/dissent in Mudel, Goff and Holden did not conflict. Mudel, 462 Mich at 734 (Kelly, J., concurring in part and dissenting in part). Of those three cases, it was only the majority’s decision in Mudel that overturned precedent. Far from support for the majority’s position, Mudel is just another example of the low esteem in which the majority holds stare decisis.

 The Legislature is presumed to be aware of judicial interpretations of existing law. Ford Motor Co v Woodhaven, 475 Mich 425, 439-440; 716 NW2d 247 (2006).

 The majority accuses me of creating “chaos and injustice” because it believes I do not consistently apply a rational basis analysis. Its heated *260 words on this subject seem designed to distract from the real point: the question is whether Hobbs and Brown properly effectuated the intent behind the statute. The fact that the Legislature has not taken action to rewrite the law strongly suggests that these cases did properly effectuate this intent. Therefore, they properly arrived at the rational basis behind the notice provision.

 The majority cites constitutional rational basis analysis when assailing my use of the theory of legislative acquiescence. But the case it cites, Harvey v Michigan, 469 Mich 1; 664 NW2d 767 (2003), did not deal with a court overturning a prior court’s interpretation of a statute. An entirely different question entirely arises when, as here, the issue presented is whether a settled statutory interpretation should be overturned.

 The majority claims that my support for legislative acquiescence undermines my “fealty” to stare decisis. It supports this by providing a list of decisions made by this majority that reject legislative acquiescence. I dissented from all of those decisions, and I have consistently supported legislative acquiescence as a proper tool for arriving at legislative intent. As I indicated earlier, I would never reach the constitutional issue in *262 deciding this case. Hence, if my view prevailed, I would not find it necessary to consider legislative acquiescence here. But I maintain that this rogue line of cases unnecessarily hamstrings the Court’s efforts at arriving at the intent of the Legislature. This position in no way undermines my adherence to stare decisis. There is a significant difference between precedent interpreting a statute relied on for decades and tools used to interpret statutes. I know of no authority that stands for the proposition that stare decisis attaches to analytical tools used in judicial interpretation. Hence, the rule of stare decisis binds us to follow the holdings of past caselaw. It does not bind us to use or refrain from using analytical tools such as the doctrine of legislative acquiescence because an earlier Court chose to do so.

 The majority claims that Hobbs’s statement that it could posit only one legitimate reason for the notice provision necessarily means that no other legitimate reason could possibly exist. This is not the case. The Court’s statement that it could think of only one reason for the statute means what it says. It leaves open the possibility that other reasons might occur to people at a later date. If the Legislature had a different intent in mind, it could have, and should have, made that clear to the Court. It has never attempted to do so. This indicates that the Court’s determination of the Legislature’s intent was correct.

 If, as the majority claims, the Legislature wanted the 120 days to he an absolute deadline, it could have added an irrebuttable presumption of prejudice. This would have satisfied even the most restrictive reading of Hobbs while, at the same time, making clear the legislative intent. The Legislature knows how to create irrebuttable presuppositions. See MCL 207.1026(1), MCL 205.94q, and MCL 399.157(2). It did not write one into this statute.

 The majority postulates that my argument for adherence to stare decisis would have been better made to the Hobbs and Brown courts. Of course, I was not on the Court when either Hobbs or Brown was decided. I can only decide the case before me. Reviewing the case before me now, I would maintain my strong predisposition to adhere to precedent. The majority’s “two-wrongs-make-a-right” argument carries little weight. It is also grossly unfair to assert, as Justice Markman does, that I have repeatedly refused to overturn precedent merely because I agreed with the precedent. Whether in agreement or not, I have in each case given heavy weight to the disruption that a reversal would cause to the state’s jurisprudence. Frequently, the disruptive effect would have been reason enough for me to refuse to overturn the precedent.

 Robinson, 462 Mich at 439.

 The majority believes that Robinson presents the most defensible approach to deciding when to overturn cases. I would note that even the Robinson factors support retaining Hobbs and Brown.